## HARVEY & CO. v. DOTY.

GAMBLING—GRAIN FUTURES—REMEDIES.—A party in this State, gambling in grain futures in Chicago exchange by an agent, cannot be required, under our statutes against gambling, to repay his agent advances made for his benefit, on the ground that such agent acted with the Chicago trader as a principal and both had the bona fide intention to deliver the grain at the specified future time.

Before GAGE, J., Fairfield, September, 1898.　Affirmed.

Action by Wm. P. Harvey & Co. v. Wm. R. Doty. From judgment for defendant, plaintiffs appeal.

*Mr. J. E. McDonald,* for appellant, cites: *Agents making contracts in their own name are liable as principals:* 2 McC., 199, 394; 9 Rich., 258; 112 N. C., 131; 5 Rich., 375. *If the agent carries out a valid contract under the statute, and the principal is shielded from paying him, it results in a fraud upon the agent, and will not be allowed* 63 N. C., 542; 91 U. S., 92; 59 N. Y., 258; 8 How., 451; 104 Mass., 167; 68 N. C., 479; 21 Wall., 178. *Under the law of agency, the principal is bound by the contracts of his agent, and he is now estopped from claiming that he did not intend to make a valid contract:* 27 S. C., 134; 47 S. C., 146; 13 S. C., 16; 52 S. C., 227. *If the agent is engaged in a lawful business, his principal is bound:* 149 U. S., 498; 121 Ill., 330.

*Messrs. Ragsdale & Ragsdale,* contra, cite: *Our Statutes make void any claim or demand founded on a contract prohibited thereby:* 45 S. C., 372; 50 S. C., 537, 548.

March 15, 1899.　The opinion of the Court was delivered by

MR. JUSTICE POPE.　This action was once before in this Court, when the nonsuit granted defendant was reversed— *50 S. C., 548.* At September, 1898, term it was tried be-

fore Judge Gage and a jury.    After a verdict for defendant
and judgment thereupon, plaintiffs appealed to this Court on
the following grounds: "I. For that his Honor erred in
charging the jury that where an agent makes contracts in
good faith, in his own name, with other parties as principals
to such contracts, for the sale of property for future deliv-
ery, and there is a *bona fide* intention on the part of such
agent and other principals to the contracts, at the time of the
making of the contracts, to actually deliver on the one hand,
and actually receive on the other, at the time or period men·
tioned in the future, such agent cannot recover losses or ad-
vances made on such contracts from his principal, unless he
shows that it was the *bona fide* intention of his principal and
the other parties to the contracts at the time of the making
thereof, to actually deliver and receive the property so sold
at the maturity of the said contracts.    II. For that his
Honor erred in charging the jury that where an agent
makes contracts for future delivery in his own name with
other parties, such agent and other parties being the prin-
cipals to said contracts, and it being the *bona fide* intention
of both of said parties, at the time of the making of the said
contracts, the one to deliver and the other to receive the
property in kind at the maturity of the contract, the burden
of proof is upon such agent to show that it was the *bona fide*
intention of both his principal and the other parties to the
contracts, at the time of the making of the contract, to actu-
ally deliver and receive the property in kind at the period
fixed in the future for the delivery thereof.    III. For that
his Honor erred in not holding, and so charging the jury in
this case, that section 1859 of the Revised Statutes contem-
plates the making of contracts, the sale and transfer of
property therein mentioned for future delivery, by and
through agents; that under said section such agents may
make said contracts in their own names with other parties as
principals thereto; and if at the time said contracts are made
it is the *bona fide* intention of the said agents and other
parties to the said contracts to deliver and receive the prop-

erty so sold, as required by said section, then said contracts of sale and transfer for future delivery are good and valid under said section, are binding on the principal of such agents, and the agents may recover from their principal for all losses incurred on said contracts or advances made thereon for their principal; and the undisclosed intention of their principal not to deliver the property so sold will not vitiate the said contracts, nor prevent a recovery by the agents for losses and advances arising upon such contracts. IV. For that his Honor erred in not holding and so charging the jury in this case, that where an agent is authorized to sell for future delivery any of the property mentioned in said section 1859, and makes the contracts of sale and delivery in his own name with other parties as principals, and both parties have the *bona fide* intention required by said section to deliver and receive said property, then it is the intention of such agent and such other parties that makes the contracts valid, and not the intention of such other parties and the principal of the agent; and if such contracts are made in good faith by the agent, his principal is estopped from disputing the validity of such contracts. V. For that his Honor erred in not holding and charging the jury in this case, that where an agent is authorized to sell for future delivery, and makes the contract in his own name with other parties as principals, and with the *bona fide* intention on the part of both such agent and such other parties, as is required by section 1859, then said contracts are good and valid under the law of this State; and section 1860 simply places the burden of proof on the agent to show such fact, to entitle him to recover from his principal for advances made, or losses incurred, in executing such contracts; and the undisclosed and secret intention of his principal not to deliver as required by section 1859, cannot affect or invalidate said contracts, or prevent a recovery of such advances and losses made and incurred by the agent. VI. For that his Honor erred in not granting a new trial upon the minutes of the Court, when it was brought to his attention that he had

erred in charging the jury that an agent could not recover for advances and losses upon such contracts, if it was not the intention of his principal to deliver the property according to the provisions of the law of this State, even although it was the *bona fide* intention of the agent and the other parties to the contracts to make the delivery as required by law."

The plaintiffs, appellants, are grain brokers in the city of Chicago, the defendant is a merchant in Winnsboro, S. C. In October, 1891, the latter procured the former to buy 20,000 bushels of corn for delivery in the month of November, 1891. The corn was bought at 52 and sold at 74½ and 75. The margins advanced by defendant and the sale of the corn on 30th November, 1891, left defendant due plaintiffs $910. This action is brought to recover that sum. Defendant interposed two defenses; one was that plaintiffs had negligently attended to his business, which negligence was the cause of this debt of $910; the second was that the purchase of the grain was naught but gambling in grain futures, and this $910 arising therefrom was null and void under our State Statutes. Both of these defenses were submitted to the jury, and they found a general verdict for the defendant. It is not claimed by the plaintiffs, appellants, that Judge Gage committed any error in charging upon the first branch of the defense. Nor is there any complaint against the Judge for his charge upon the requests to charge, submitted by the plaintiffs. Indeed, when reduced to a careful analysis, the main objection of the plaintiffs, appellants, to the Judge's charge is to that part which bore on the agency of the plaintiffs for defendant, and this embraces them all. Stress is laid upon the matter of the agency of the plaintiffs, appellants, for the defendant. We must have recourse to the legislation of this State, whose purpose was to destroy, root and branch, gambling in futures, as they are called. This legislation struck at purchases for future delivery of bonds, cotton, grain, meat—in fact, it spared nothing in the animal or vegetable world which could be made the subject of sale for future delivery. The legisla-

tion in question may be found at sections 1859 to 1863, inclusive, of the Revised Statutes of the year 1893. Section 1859 provides that "Every contract * * for the sale or transfer at any future time * * of any grain * * shall be void unless the party contracting * * to sell or transfer the same is at the time of making such contract * * the owner or assignee thereof, or is at the time authorized by the owner or the assignee thereof, or his duly authorized agent, to make and enter into such contract * * or unless it is the *bona fide* intention of both parties to the contract * * at the time of making the same, that the * * grain * * so agreed to be sold and transferred, shall be actually delivered in kind by the party contracting to sell and deliver the same, and shall be actually received in kind by the party contracting to receive the same at the period in the future mentioned and specified in the said contract * * *" Section 1860 by its provisions makes it incumbent upon the party, who sues to enforce any such contract, to assume the burden of proof that the party making the same was at the time the contract was made, the owner or assignee of the grain so agreed to be sold, or was at that time authorized by the owner or assignee thereof, or his duly authorized agent, to make and enter into such contract, or that at the time of making such contract, it was the *bona fide* intention of both parties thereto that the grain so agreed to be sold or transferred should be actually delivered and received in kind by the said parties at the future period mentioned therein. The other sections—1861, 1862, 1863—need not be repeated. This Court has construed these sections, in the case of *Gist* v. *Telegraph Co.*, 45 S. C., 344, and also in *Riordan* v. *Doty,* 50 S. C., 537; and if the contention here was as to the parties considered in those cases, it would be governed by them. But the appellant seeks to give a new energy to the discussion by contending that a new phase of the question is presented by the agent of the defendant, when such agent purchased the grain in Chicago of different holders of grain there, without disclosing to such holders, when he pur-

chased, that he was an agent and not a principal; and as he, as such principal, and such holders, who dealt with him, had a *bona fide* intention to deliver in kind grain contracted for future delivery; the plaintiffs, as such agents of defendant, having acted *bona fide* in grain trade, intending a delivery in kind upon future delivery, are not affected by defendant's intention to the contrary, which was not communicated to such agents. It should be borne in mind that the record discloses that plaintiffs and defendants are directly at variance as to whether plaintiffs knew of defendant's purpose to gamble in grain futures. Plaintiffs say they did not know; the defendant insists that they had full knowledge. Of course, this is a question for the jury, and by their general verdict we are obliged to assume that they have found in favor of the defendant's contention. But leaving that out of view for the present, let us examine this contention as to agency as raised by appellants. We will agree with them thus far—that the appellants, never having disclosed their agency for the defendant to the holders of grain in Chicago with whom they made contracts for future delivery, could have been treated by such grain holders in Chicago as principals in these grain transactions. But those Chicago grain dealers are not parties before us; they make no claim upon our attention. It is certain that no matter how the grain dealers in Chicago may have considered Harvey & Co. as principals, the defendant, Doty, was always obliged to treat them as his agents, and Harvey & Co., the plaintiffs, were always obliged to be bound by their agency to Doty. As such agents they were obliged, so far as Doty was concerned, to hold themselves out to the grain dealers in Chicago as the agents of Doty, and not as principals. All the cases which are cited, which seem to infringe upon the foregoing statement, will be found to have reference to the rights of third persons, and not as existing between a principal and his agent. But admitting the foregoing view to be erroneous, still we must have recourse to and be governed by the terms of our statute; and certainly there is nothing to be found

there that gives the slightest color to the contention of the appellant. It is Doty and his agents who are before our Courts. The statute imperatively requires that both minds—that of Doty on the one side, and the dealers in grain on the other side—should contract with a *bona fide* intention to deliver grain in kind. There is no provision in the statute in question for the agents to be principals in their dealings with grain dealers in Chicago. The Judge kept in view in his charge to the jury the provisions of our statute, and we cannot see that he erred. The last ground of appeal in relation to error for not granting a new trial is disposed of by the foregoing views.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.