Watts
v.
Lindsey's
Heirs.

[LOCAL LAW. CHANCERY.]

## WATTS v. LINDSEY'S Heirs and Others.

It is a rule at law, and in equity, that a party must recover on the strength of his own title, and not on the weakness of his adversary's title.

To support an entry, the party claiming under it must show that the objects called for are so described, or are so notorious, that others, by using reasonable diligence, can readily find them.

The following entry was pronounced under the circumstances, to be void for uncertainty: " 7th of August, 1787. Capt. Ferdinand O'Neal enters 1000 acres, &c. on the waters of the Ohio, *beginning at the northwest corner of Stephen T. Mason's entry, No.* 654, thence with his line east 400 poles, north 400 poles, west 400 poles, south 400 poles." The entry of *Stephen T. Mason* referred to, being as follows: "7th of August, 1787. Stephen T. Mason, Assignee, &c. enters 1000 acres of land on part of a military warrant, No. 2012, on the waters of the Ohio, beginning 640 poles north from the mouth of *the third creek* running into the Ohio, above the mouth of the Little Miami River; thence running west 160 poles; north 400 poles; east 400 poles; thence to the beginning."

The *Ohio and Little Miami Rivers* are identified and notorious objects.

But *the third creek* above the mouth of the Little Miami, is to be taken according to the numerical order of the creeks, unless some other stream has by general reputation or notoriety been so considered.

*Cross Creek*, the stream which the party claiming under O'Neal's entry, assumed for the beginning to run the 640 poles north from the mouth of the *third creek*, as called for in Mason's entry, not being in fact numerically the *third creek above the mouth of the Little Miami*, and their being no satisfactory proof that it had acquired that designation by reputation—the claim was pronounced invalid.

## Appeal from the Circuit Court of Ohio.

*Feb.* 10*th.*     This cause was argued by Mr. *Doddridge* for the appellant, and by Mr. *Brush* for the respondents.

Mr. Justice Todd delivered the opinion of the Court.

This controversy arises from entries for lands in the Virginia military reservation, lying between the Scioto and Little Miami Rivers, in the district of Ohio.

The plaintiff in the court below, (Watts,) exhibited his bill in Chancery for the purpose of compelling the respondents to surrender the legal title, acquired under an elder grant founded on a surveyor's entry, than the one under which he derives his title.

The entry, set forth in the bill, and claimed by the plaintiff, is in the following words: " 7th August, 1787. Captain Ferdinand O'Neal enters 1000 acres, &c. on the waters of the Ohio, beginning at the northwest corner of Stephen T. Mason's entry, No. 654, thence with his line, east 400 poles, north 400 poles, west 400 poles, south 400 poles."

The entry of Stephen T. Mason, referred to in the above entry, is in the following words:

" 7th August, 1787. Stephen T. Mason, assignee, &c. enters 1000 acres of land on part of a military warrant, No. 2012, on the waters of the Ohio, beginning 640 poles north from the mouth of the *third creek* running into the Ohio above the mouth of the Little Miami River ; thence running west 160 poles; north 400 poles ; east 400 poles ; south 400 poles; thence to the beginning."

The respondents, in their answers, deny the validity of O'Neal's entry; allege that it is vague and uncertain, and that the survey made on it includes no part of the land described in the entry, and if pro-

1822.

Watts
v.
Lindsey's
Heirs.

*March* 1*st.*

perly surveyed would not interfere with any part of the land to which they claim title ; that the creek selected by the complainant as the *third creek*, in the entry of Mason, on which that of O'Neal depends, is not in truth and in fact, the *third creek* running into the Ohio above the mouth of the Little Miami River ; but that another is.

The depositions of several witnesses were taken, and other exhibits filed in the cause. Upon a final hearing in the Circuit Court, a decree was pronounced dismissing the plaintiff's bill.

The cause is now brought into this Court by appeal, and the *principal question* to be decided is, whether from the allegations and proofs in the cause, the entry claimed by the plaintiff can be sustained upon sound construction, and legal principles arising out of the land laws applicable thereto.

Before we go into an examination of that question, we will dispose of some preliminary objections made by the counsel for the respondents. They were that attested copies of the entries and patent referred to, and made exhibits in the bill are not in the record : that there does not appear in the record any assignment, or proof of an assignment from O'Neal to the plaintiff. Nor does it appear from the platt where the entry of O'Neal was actually surveyed, nor does it designate the creeks running into the Ohio above the mouth of the Little Miami River, so as to ascertain the *third creek.*

Some of these objections seem to be well founded, and might induce the Court to dismiss the bill, but such dismission should be without prejudice to the

mencing of any other suit the party might choose to bring ; the effect of which would be only turning the parties out of Court, without deciding the merits of the cause. We have therefore attentively examined the record, and are of opinion it contains enough to get at and decide the merits.

It has been long and well established as a rule of law and equity, that a party must recover on the strength of his own title, and not on the weakness of his adversary's title.

In order to uphold and support an entry, it is incumbent on the party claiming under it, to show that the objects called for in it are so sufficiently described, or so notorious, that others, by using reasonable diligence, could readily find them.

As O'Neal's entry is dependent on Mason's, if the objects called for in the latter can be ascertained, the position of the former can be precisely and certainly fixed.

The Ohio and Little Miami Rivers, from general history, the one having been used before, at, and since the time when these entries were made, as the great highway in going from the eastern to the western country, and each of them having been referred to in general laws, and designated as boundaries of certain districts of country, we consider must be deemed and taken as being identified and notorious, without further proof.

The *third creek*, running into the Ohio above the mouth of the Little Miami River, is then the only and principal object to be ascertained, to fix the entry of Mason, with specialty and precision. The plain-

tiff has assumed what is now called *Cross Creek* for the beginning, to run the 640 poles north from the mouth of the *third creek*, as called for in Mason's entry. The respondents contend, that what is now called Muddy Creek, and sometimes Nine Mile, is " the third creek."

It seems to be admitted, in argument, that *Cross Creek* is not, in truth and in fact, numerically the third creek above the mouth of the Little Miami. But the counsel for the plaintiff contends that the early explorers of the country, when the entries were made, designated Muddy Creek as the second. That streams then called *creeks*, have since been degraded into *runs*, and other streams, then called *runs*, are now termed *creeks*.

If this argument was supported by the proofs in the cause, it would be entitled to great consideration ; but upon a careful and minute examination, there is a great preponderance of testimony against it : there is the deposition of one witness that affords some foundation for it ; there are also the depositions of many witnesses who contradict it. But waiving this testimony, and examining this entry upon its face, it is obvious that subsequent locators and explorers commencing their researches at the mouth of the Little Miami River, would examine the creeks emptying into the Ohio above, according to their *numerical* order. The words " the third creek," emphatically applies to that order ; nor would they depart from it, unless another stream, by general *reputation* or *notoriety*, had been so considered. It has however ever never been held that *reputation* or *notoriety*

could be established by a single witness ; and it may be further observed, that the other witness, whose deposition has been taken on the part of the plaintiff, states, that he had meandered the Ohio, and in his connection, had laid down Muddy, or Nine Mile Creek, as the third, and that he so considered it, until the year 1806, or 1807, when from the information of the other witness, and an examination of the entries and surveys on the books of the principal surveyor, he was induced to change his opinion. It is also in proof that the plaintiff and the last mentioned witness, in searching for O'Neal's entry, claimed a different creek as being the *third*, and directed the survey to be commenced from it. If, then, a locator and deputy surveyor, who had meandered the Ohio, and designated Muddy Creek as the *third*, and had so considered it for nearly ten years, it is surely a strong circumstance to show negatively, that *Cross Creek* was not in fact numerically, nor by general reputation or notoriety, considered as " the third creek." If an examination of the records in the principal surveyor's office would shew that the streams were designated and numbered differently, it was incumbent on the party to exhibit at least so much thereof as would conduce to prove the fact. It is incompetent to prove it by parol.

Upon mature consideration of the whole case, it is the unanimous opinion of the Court, that the decree of the Circuit Court be

Affirmed with costs.