CHARLOTTE NAT. BANK OF CHARLOTTE, N. C., v.
SOUTHERN RY. CO.

(Circuit Court of Appeals, Fourth Circuit.   July 12, 1910.)

No. 919.

TRIAL (§ 177*)—DIRECTION OF VERDICT—EFFECT OF MOTION BY BOTH PARTIES.
Where both parties at the close of the testimony request peremptory instructions in their favor, but also at the same time ask for special charges to be given in the event that the peremptory requests are denied, some of them relating to conflicting evidence from which divergent inferences could be drawn, such peremptory requests do not affirm that there are no disputed questions of fact which should be submitted to the jury.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 400; Dec. Dig. § 177.*

Operation and effect of motions by both plaintiff and defendant for direction of verdict, see note to Love v. Scatcherd, 77 C. C. A. 8.]

In Error to the Circuit Court of the United States for the Western District of North Carolina, at Charlotte.

Action by the Charlotte National Bank of Charlotte, N. C., against the Southern Railway Company. There was a directed verdict for defendant, and plaintiff brings error. Reversed and remanded.

C. W. Tillett and E. T. Cansler, for plaintiff in error.

W. B. Rodman and John K. Graves (R. G. Lucas, on the brief), for defendant in error.

Before GOFF and PRITCHARD, Circuit Judges, and CONNOR, District Judge.

GOFF, Circuit Judge. This writ of error is to a judgment of the court below, on a verdict directed by that court, in an action instituted by the plaintiff in error, against the defendant in error, to recover the value of certain bales of cotton, covered by bills of lading held by the plaintiff in error, which cotton it is alleged the defendant in error unlawfully delivered to other persons. The complaint charges that the defendant, or its connecting carriers, issued the several bills of lading, for the cotton mentioned in them, which was to be carried and delivered in accordance with the contracts of carriage; that all of the cotton was actually received by the defendant, either from the shippers direct or from connecting lines, and was as required by the terms of the bills of lading transported to Charlotte, where it was placed in its compress by the defendant, there to be compressed so as to facilitate its carriage to Norfolk; that said bills of lading were for value duly assigned and delivered to the plaintiff by the original owners, after the cotton had been received by the defendant at the point of shipment, and before its arrival at Charlotte, and that the plaintiff was when the suit was brought and has been since such assignments the owner of said bills of lading, and said cotton; that while the cotton was so at the compress in Charlotte, the defendant wrongfully delivered the same to persons other than the plaintiff, without having

first required the production and surrender of the bills of lading, and without having required the parties to whom it was so delivered to substitute an equal number of bales of cotton therefor.

The answer of defendant admits that it issued certain bills of lading for cotton, and that it received from its connecting carriers cotton to be transported according to the terms of the bills of lading issued therefor, and demands the production of the original bills for inspection; says that if they are genuine the defendant received the cotton as described in them, but denies that plaintiff is the owner of them, and denies that the defendant delivered the cotton covered by them, without first requiring the surrender of the bills of lading; for further defense the defendant pleaded in bar of the plaintiff's right to recover, its failure to make claim for the cotton within 30 days after the expiration of the time designated for the delivery of the same; that the compress was under the control of B. D. Heath and others, and that as per the terms of the bills of lading the cotton was stopped at Charlotte for compression, the compress forming a separate link in the chain of transportation, the defendant not being responsible for its wrongdoing, and that if the cotton was wrongfully delivered it was the act of Heath and others; that said Heath was the president of the plaintiff, and also a stockholder and officer of a corporation known as the Heath-Reid Jobbing & Commission Company, and that he contracted with himself for said two corporations, that the commission company, during the year in which said bills of lading were issued, should purchase cotton, the shippers to take "order notify" bills of lading therefor, consigned to Norfolk, but to be stopped at Charlotte for compression, which bills were to be attached to drafts drawn on the commission company for the price of the cotton, and that when the drafts were paid the bills were to be delivered to the commission company; that the drafts were paid by checks drawn by the commission company on the plaintiff, and that thereby the cotton became the property of the said commission company; that the plaintiff knew the bills of lading required that the cotton should be stopped at the Charlotte compress, operated by Heath and others, and that upon its arrival there would go into the possession of plaintiff through Heath, its president; that by the custom and the rules of the compress, as well as by the express understanding between the plaintiff and the commission company, the latter had the right to divert certain cotton from its original destination, and for that purpose to remove it from the compress; that the commission company, either as the agent or the partner of the plaintiff, had authority to receive and dispose of the cotton as it saw fit, and for that purpose to demand and receive bills of lading covering it, and to receive the proceeds of the sales of cotton so disposed of by it; that if the plaintiff had any interest in the said bills of lading, such interest was as security for any amount the commission company might owe it upon a final accounting, and that a proper accounting would show that such company was indebted but little if at all to the plaintiff; that the plaintiff is not the real party in interest, because Heath, either before or since the bringing of this action, had agreed to indemnify it against loss on account of its transactions with the

commission company, and that he and the plaintiff held other securities for such indebtedness, which should be first applied thereto, part of which had been released without the consent of defendant, because whereof the defendant has been discharged of any liability for any balance due on such account; that the plaintiff authorized said commission company to sell the cotton, and has received the proceeds thereof in full; that the plaintiff authorized the commission company to gamble in cotton futures, and consented to its using the funds deposited from such proceeds for that purpose, and that said company's dealings in both spot and future contracts was as the agent of the plaintiff, having so received the entire proceeds of all the cotton covered by the said bills of lading. As a still further defense the defendant pleaded that a great part of the cotton so handled by the commission company was transported by way of Charlotte, to be stopped for compression, substitution, or diversion, and that plaintiff, instead of acting merely as an agent for the collection of drafts drawn by the original shippers of cotton, paid the same out of its own funds, retaining the bills of lading attached thereto, and then permitted the commission company to assume control of the cotton, withdraw the same from the compress and reship it to Norfolk or elsewhere, and that when that company had withdrawn from the compress cotton equal in amount to that called for in any one bill of lading, it would issue to defendant a duebill for the delivery of an equal amount of cotton, and would from time to time strike a balance with the plaintiff, and then obtain from it such bills of lading as plaintiff might owe the commission company, plaintiff not requiring, before the surrender of the bills, the deposit of the proceeds of the sales of the cotton covered by them, relying instead upon the promise of the commission company to account with it for such sales, and that because of such dealings the plaintiff would not present bills of lading and make demand upon defendant for cotton within a reasonable time, but consented to such course of dealing under which all the cotton referred to in the complaint was withdrawn from the compress by the commission company, and that when the plaintiff discovered that such company was insolvent, it conspired with that company to defraud the defendant by retaining said bills of lading then in plaintiff's possession, though the cotton they called for had then been delivered, and the plaintiff therefore refused on demand to surrender said bills to the defendant; that such course of dealing induced the defendant to deliver the cotton to the commission company, and that the plaintiff by such conduct was guilty of such laches as estops it from now denying that the commission company was authorized to receive the cotton.

The plaintiff by replication denied that the "thirty-day clause" was any part of the contract of carriage, or that the plaintiff had any notice thereof prior to the filing of defendant's answer, and avers that defendant waived its right to rely upon that clause by previous custom and course of dealing; that under the contracts of carriage, and the custom of defendant pertaining to cotton at the compress, defendant was in the habit upon the surrender of bills of lading to permit the owners to ship cotton to other points, thereby by such interference

with the continuous carriage, and by allowing the cotton to remain in the compress for an indefinite time, plaintiff was unable to reasonably ascertain when it was wrongfully converted, or to know what was a reasonable time for its transportation, or when to make claim for the loss thereof in accordance with said "thirty-day" clause, by reason whereof the defendant was estopped to plead such clause in defense of this action; that plaintiff did make demand upon defendant for the cotton within a reasonable time after it discovered that the same had been converted, and that then defendant again waived its right to rely upon that clause by investigating the claim made therefor, without asserting any right thereunder.

This suit was originally instituted in the superior court of Mecklenburg county, N. C., and was by due proceedings removed to the Circuit Court of the United States for the Western district of North Carolina. The plaintiff below is a corporation organized and existing under the national banking act of the United States, and the defendant is a corporation created and doing business under the laws of the state of Virginia.

On the pleadings referred to, the case was tried before a jury on the issue, "Is the plaintiff entitled to recover of defendant damages for the causes alleged in the complaint, and if so, in what amount?" A considerable number of witnesses were examined before the jury by both plaintiff and defendant, depositions were read, exhibits, bills of lading, account books, and waybills were offered by the parties and laid before the jury. When the evidence had all been submitted, counsel for plaintiff presented to the court certain instructions in writing, among others one directing the jury to find for the plaintiff, assessing its damages at such sum as should not exceed the value of the cotton covered by the bills of lading described in the complaint. The other instructions so offered by plaintiff's counsel requested the court to give certain directions relating to the facts and the law applicable thereto, in case the court should decline to give the peremptory instruction. At the same time the defendant's counsel requested the court to give to the jury a number of instructions relating to the evidence, the effect thereof and the law pertinent thereto, including a positive direction to find a verdict in favor of the defendant. Thereupon the court after hearing argument of counsel, ruled as follows:

"These two requests for instruction as stated, presented as set forth, do not waive the service of the jury in the case, but in the opinion of the court, following the decision of the Supreme Court of the United States, in the case of Beuttell v. Magone [157 U. S. 154, 15 Sup. Ct. 566, 39 L. Ed. 654], the action of counsel in thus presenting for each party, at the close of the testimony, a request to the court, in writing, to instruct a verdict, does affirm that there is no disputed question of fact which can operate to deflect or control the question of law involved in this case.

"So, therefore, the court, without assigning reasons, which it deems unnecessary at this time (reserving, however, the privilege or the right to file in the case reasons at length, in support of the action taken by the court) instructs the jury, in response to the defendant's request, to return a verdict in behalf of the defendant."

In accordance with this instruction of the court a verdict was returned by the jury in favor of the defendant, on which a judgment

was duly entered, from which the writ of error now under consideration was asked for and allowed. The assignments of error are numerous, but in the light that the record presents the case to the court, only a few of them will be referred to.

The "order notify" bills of lading concerning which plaintiff claimed damages from defendant, were contracts made by the defendant in which it agreed to deliver the cotton mentioned in them upon the order of the shipper. They were by virtue of the order of the shipper assigned for value to the plaintiff. The bills of lading had been issued and delivered to the shippers by the defendant, after the cotton had been received by it, and the shippers had indorsed them, attached them to drafts drawn on the Heath-Reid Jobbing & Commission Company, and then sent them in course of business to banks in Charlotte. When the plaintiff received such drafts it retained the bills of lading, the commission company giving its check on plaintiff for the amount of the draft, which was then delivered to that company. If the drafts had been received by a bank other than plaintiff, they were paid by the commission company giving its checks for them on plaintiff, the bills of lading going to plaintiff and the drafts to the commission company. The bills of lading required their surrender properly indorsed, in order to secure the delivery of the cotton mentioned in them; the rules of defendant in force at the compress prohibited the delivery of cotton therefrom without the surrender of the bills of lading; these rules were not observed at the compress by the defendant, in its dealings with the commission company, defendant insisting that plaintiff had notice of and assented to such nonobservance, which plaintiff denied. The bills of lading reading "order notify Heath-Reid Commission Co." gave notice that such company was not the consignee to whom the cotton was to be delivered. By the contract made with the shipper when said bills were issued, it was the duty of the defendant to transport the cotton to Norfolk, stopping it at the compress at Charlotte and there notifying the commission company, and finally to deliver the cotton on the order of the shipper. Such bills of lading enter largely into the commercial transactions of the country, great lines of credit being given on them, and it is highly important that neither their validity should be questioned, nor the faith of the public in them be impaired. These bills of lading were the muniments of title to the cotton described in them, and when they were duly assigned the title to the cotton as well as its constructive possession passed with them to the assignee, to whom it was the duty of the carrier issuing them,—the defendant below,—to deliver said cotton, on the production and surrender of the bills, unless the assignee had assented to its delivery to others without such surrender.

We think that it was clearly shown to the jury that the defendant below made and issued the bills of lading offered in evidence by the plaintiff; that the defendant duly received the cotton covered by them, and subsequently permitted the commission company to take possession of and dispose of said cotton without having required that company to produce and surrender the bills of lading, which defendant knew had in due course of business been assigned to the plaintiff.

Therefore, unless the defendant can succeed in sustaining its contention that it was because of its dealings with the commission company and the plaintiff—referred to in the pleadings—which defendant claims were with the understanding that the plaintiff would subsequently deliver to the commission company for the defendant the bills of lading covering the cotton delivered to the commission company by the defendant, then the plaintiff will be entitled to recover for the value of the cotton called for by said bills of lading.

Does the testimony show that the commission company was the agent of the plaintiff for the purpose of receiving from the defendant the cotton covered by the bills of lading held by the plaintiff, with the understanding that as such agent it should sell said cotton and deposit the proceeds of the sales thereof with plaintiff, and return to defendant the bills of lading issued for the cotton so sold, as is claimed by defendant? If so, the verdict and judgment should be for the defendant. We do not find it to be our duty—after analyzing the mass of testimony found in the record—to express an opinion concerning it indicating the verdict that should have been found from it. We find the testimony relating to the material points to which we have referred to be conflicting, and peculiarly of that character requiring a decision by a jury, before which the witnesses appeared, and by which the credit to be given them can be ascertained. As this case is to be retried, we submit to the jury hereafter to be impaneled the finding of the facts essential to a just disposition of this controversy.

We are impelled to the conclusion that the learned judge of the court below was in error when he held that the rule announced by the Supreme Court in Beuttell v. Magone, 157 U. S. 154, 15 Sup. Ct. 566, 39 L. Ed. 654, was applicable to the conditions shown by the record to have existed in the case at bar at the time he directed the verdict complained of. It appears that not only the plaintiff, but also the defendant below, at the close of the testimony, requested peremptory instructions in their favor, and that they also at the same time asked for special instructions—to be given in the event the peremptory requests were denied—some of them relating to the conflicting evidence from which it was apparent that divergent inferences could be drawn. The court properly held that the requests by both plaintiff and defendant for verdicts in their favor by direction, did "not waive the service of the jury," but mistakenly concluded that such requests affirmed that there were no disputed questions of fact which he should submit to the consideration of the jury. On this point, and as conclusive of it, we quote from the case of Empire State Cattle Co. v. Atchison, Topeka & Santa Fé Railway Co., 210 U. S. 1, 8, 28 Sup. Ct. 607, 609, 52 L. Ed. 931, as follows:

"It was settled in Beuttell v. Magone, supra, that where both parties request a peremptory instruction and do nothing more, they thereby assume the facts to be undisputed, and in effect submit to the trial judge the determination of the inferences proper to be drawn from them. But nothing in that ruling sustains the view that a party may not request a peremptory instruction, and yet, upon the refusal of the court to give it, insist, by appropriate requests, upon the submission of the case to the jury, where the evidence is conflicting or the inferences to be drawn from the testimony are divergent. To hold the contrary would unduly extend the doctrine of Beuttell

v. Magone, by causing it to embrace a case not within the ruling in that case made. The distinction between a case like the one before us and that which was under consideration in Beuttell v. Magone has been pointed out in several recent decisions of Circuit Courts of Appeals. It was accurately noted in an opinion delivered by Circuit Judge Severens, speaking for the Circuit Court of Appeals for the Sixth circuit, in Minahan v. Grand Trunk Ry. Co., 138 Fed. 37, 41 [70 C. C. A. 463], and was also lucidly stated in the concurring opinion of Shelby, Circuit Judge, in McCormick v. National City Bank of Waco, 142 Fed. 132 [73 C. C. A. 350], where, referring to Beuttell v. Magone, he said (page 133 [142 Fed., page 351, 73 C. C. A.]):

" 'A party may believe that a certain fact which is proved without conflict or dispute entitles him to a verdict. But there may be evidence of other, but controverted facts, which, if proved to the satisfaction of the jury, entitle him to a verdict, regardless of the evidence on which he relies in the first place. It cannot be that the practice would not permit him to ask for peremptory instructions, and, if the court refuses, to then ask for instructions submitting the other question to the jury. And if he has the right to do this, no request for instructions that his opponent may ask can deprive him of the right. There is nothing in Beuttell v. Magone, supra, that conflicts with this view when the announcement of the court is applied to the facts of the case as stated in the opinion.

" 'In New York there are many cases showing conformity to the practice announced in Beuttell v. Magone, but they clearly recognize the right of a party who has asked for peremptory instructions to go to the jury on controverted questions of fact if he asks the court to submit such questions to the jury. Kirtz v. Peck, 113 N. Y. 226, 21 N. E. 130; Sutter v. Vanderveer, 122 N. Y. 652, 25 N. E. 907.

" 'The fact that each party asks for a peremptory instruction to find in his favor does not submit the issues of fact to the court so as to deprive the party of the right to ask other instructions, and to except to the refusal to give them, nor does it deprive him of the right to have questions of fact submitted to the jury if issues are joined on which conflicting evidence has been offered. Minahan v. G. T. W. Ry. Co., 138 Fed. 37 [70 C. C. A. 463].'

"From this it follows that the action of the trial court in giving the peremptory instruction to return a verdict for the railway company cannot be sustained merely because of the request made by both parties for a peremptory instruction in view of the special requests asked on behalf of the plaintiffs. The correctness, therefore, of the action of the court in giving the peremptory instruction depends, not upon the mere requests which were made on that subject, but upon whether the state of the proof was such as to have authorized the court, in the exercise of a sound discretion, to decline to submit the cause to the jury. That is to say, the validity of the peremptory instruction must depend upon whether the evidence was so undisputed or was of such a conclusive character as would have made it the duty of the court to set aside the verdicts if the cases had been given to the jury and verdicts returned in favor of the plaintiff. McGuire v. Blount, 199 U. S. 142, 148 [26 Sup. Ct. 1, 50 L. Ed. 125], and cases cited; Marande v. Texas & P. R. Co., 184 U. S. 191 [22 Sup. Ct. 340, 46 L. Ed. 487], and cases cited; Southern Pacific Co. v. Pool, 160 U. S. 440 [16 Sup. Ct. 338, 40 L. Ed. 485], and cases cited."

The evidence in this case as it was before the jury, when the court directed the verdict, was of such character that it is quite improbable that the court would, under the rules applicable to such conditions, have disturbed a verdict rendered for either party. We are therefore unable to sustain the insistence of counsel for defendant in error that the direction in favor of the defendant below was proper, for the reason that the court would have been bound to set aside a verdict for the plaintiff had one been rendered.

It follows that the assignments of error relating to the action of the court in directing a verdict for the defendant, and in refusing to

submit the case to the jury are not without merit, and that we find it to be our duty to reverse the judgment and set aside the verdict on which it was based. The court below did not consider the other instructions asked for by the plaintiff in error. Under the conviction that he was forced, by the rule of practice referred to, to direct a verdict, he did not find it necessary to pass upon them. It does not follow that this court should now discuss them, or the assignments relating to them, for it is not to be presumed that the case when tried again will then be so presented as to render all of them pertinent, or that if then applicable that the court will not give them to the jury.

We find no error in the rulings of the court concerning the admission and rejection of testimony, and consequently the assignments of error relating thereto are without merit. The judgment complained of will be reversed, the verdict of the jury will be set aside, and the case will be remanded so that another trial therein may be had.

Reversed.