## WEIDENFELD v. PACIFIC IMP. CO.
### No. 282.

Circuit Court of Appeals, Second Circuit.
July 21, 1930.

Lewis, Garvin & Kelsey, of New York City (Edwin T. Murdoch, Edwin L. Garvin, and C. C. Daniels, all of New York City, of counsel), for appellant.

Larkin, Rathbone & Perry, of New York City (Welles V. Moot, of Buffalo, N. Y., and Orville C. Sanborn, of New York City, of counsel), for appellee.

Before MANTON, SWAN, and AUGUS-TUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is an action to recover $709,953.17, and interest, alleged to have been collected by defendant for plaintiff's use in 1895, no part of which had ever been paid, though payment was duly demanded. The defenses are payment, the statute of limitations, and set-off to the extent of the claim of a greater sum due defendant from plaintiff. The case really turns on the sufficiency of the proof of the defense of payment. At the close of the case the defendant moved for the direction of a verdict in its favor on the ground that payment of the sum sought to be recovered had been established. This motion was denied, and the questions whether the defendant had paid the sum owing or had a claim against the plaintiff for a greater sum which it had the right to set off were left to the jury, with instructions that in either event they should find a verdict for the defendant. The jury returned such a verdict, and plaintiff brings error.

By written agreement of October 18, 1894, the plaintiff Weidenfeld and the defendant Pacific Improvement Company agreed to sell to Henry H. Rogers and Moore & Schley, and the latter to buy from the former, all their stock not to exceed 8,000, nor less than 7,000 shares in the Citizens' Gas Company, and not to exceed 9,000, nor less than 8,000 shares in the Brooklyn Gas Light Company; said purchase to be conditional upon the consolidation of these and certain other companies within seven months, with the right of either party to terminate the contract if the consolidation was not effected within such period. The purchase price of each share of Citizens' Gas Company stock was to be $60 in cash and $60 par of stock in the Consolidated Company, and for each $25 share of stock of Brooklyn Gas Light Company was to be $30 in cash and $60 par of stock in the Consolidated Company. The buyers agreed to pay interest upon the amount to be paid in cash at the rate of 4 per cent. per annum from the date of the contract. The parties entered into a supplemental agreement on May 21, 1895, under which it was recited that Weidenfeld and the Pacific Improvement Company had delivered 7,532 shares of Citizens' Gas stock and 8,054 shares of Brooklyn Gas Light stock to Rogers and Moore & Schley, and that the latter had paid to them $60 per share for the Citizens' Gas stock and $30 per share for the Brooklyn Gas Light stock, amounting in all to $709,953.78; the sum agreed to be paid in cash, the receipt of which Weidenfeld and the Pacific Improvement Company acknowledged. It was agreed in the supplemental memorandum that the time to pay the part of the purchase price to be delivered in stock of the Consolidated Company should be ex-

tended to January 1, 1896, but there was no right given Rogers and Moore & Schley to secure the return of the cash payment unless Weidenfeld and the Pacific Improvement Company should require the return of their stock.

It is not disputed that Rogers and Moore & Schley made the cash payment for the 7,532 shares of Citizens' Gas stock and the 8,054 shares of Brooklyn Gas Light stock on May 21, 1895, by check of Moore & Schley for $709,953.78, drawn to the order of Pacific Improvement Company and C. Weidenfeld, which was indorsed by Weidenfeld and deposited by Pacific Improvement Company to its credit in the Bank of America. It is this sum which the plaintiff insists has never been repaid, and which he seeks to recover in this action.

At the outset Weidenfeld is confronted by the inherent improbability of his contention. The occurrences were in 1895, and this action was not brought until 1922, after many of the actors in the transaction and the most important ones were dead. The plaintiff says he did not go to law with the defendant during the lifetime of Collis P. Huntington, who was a leading factor in the Pacific Improvement Company, a corporation organized to handle financial and construction operations of the Southern Pacific Railroad, because he was on intimate terms with Huntington, had profitable business relations with him, and the latter had promised to recommend a payment of $750,000 to $800,000 in settlement of his claims. But Huntington died in 1900, and still Weidenfeld did and, so far as appears, said nothing until he consulted Governor Black, whom he had employed as counsel in another litigation in 1905, and who told him that this cause of action had outlawed. In 1917 he claims to have been advised by other counsel that the statute of limitations had not run because the Pacific Improvement Company up to that time had not obtained a license to do business in the state of New York. But even after this he did nothing to assert his claim for five years more for the supposed reason that he had another action pending in the United States court. Certainly these are lame excuses for twenty-seven years of inaction upon a huge claim, and they in themselves render its existence highly improbable.

But, in view of the great lapse of time, the death of important witnesses, such as Collis P. Huntington, the president, and Thomas H. Hubbard, the vice president, of Pacific Improvement Company, and Frank H. Davis, the cashier, the evidence of payment for the account of Weidenfeld of the cash received for the sale of the Citizens' Gas and Brooklyn Gas Light stock is remarkably complete and overwhelmingly convincing. In the files of the Pacific Improvement Company was found a memorandum of the closing on May 21, 1895, in the handwriting of Davis, setting forth the shares of the Citizens' Gas Company that were delivered on May 21, 1895, to Rogers and Moore & Schley, and above it, on the same sheet, are further data as to these shares which the testimony shows was typewritten on an old typewriter with a green copying ribbon that the Pacific Improvement Company had thirty-five years ago. The sheet as a whole reads as follows:

### Memo. Gas Stocks.

| | |
|---|---|
| P. I. Co. owns 200 shares. Sell at 60 | $12,000. |
| do. holds as collateral 5,504 shares. Sell at 60 | 330,240. |
| do. advanced on equities in certain loans with Brooklyn Gas Stock as collateral—say | 43,000. |
| Total cash to be received.... | $385,240. |
| Bonus in Stock of new Company to be received as follows: | |
| On 200 shares Cit. Gas Co. owned—say | 12,000. |
| On 5,504 shares do. held at collateral | 330,240. |
| | 342,240. |
| In addition to the above Mr. Weidenfeld will receive as bonus on | |
| 8,054 Shares Brooklyn Gas Co. stock—say | 120,810. |
| 1,760 Shares Cit. Gas Stock—say | 105,600. |
| | 226,410. |
| | $568,650. |

Memo. of Citizens' shares delivered

| | |
|---|---|
| P. I. Co. | 200. |
| Turnure | 58. |
| Stillman | 10. |
| Collateral | 7264. |
| | 7532. |

It is contended that the foregoing memorandum was inadmissible, but it was not only a memorandum made in the course of business under the supervision of a person, since deceased, which is highly probative and

open to no suspicion, but it seems to be expressly rendered competent by section 374-a of the New York Practice Act in effect September 1, 1928, which reads as follows:

"Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible in evidence in proof of said act, transaction, occurrence or event, if the trial judge shall find that it was made in the regular course of any business, and that it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence or event, or within a reasonable time thereafter. All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but they shall not affect its admissibility. The term business shall include business, profession, occupation and calling of every kind."

According to the recital in the supplemental agreement, as well as under the foregoing memorandum, the Citizens' Gas stock for distribution at $60 per share involved a cash payment of $451,920.00
The 8,054 shares of Brooklyn Gas Light stock having a par value of $25 per share and selling at $120 for each $100 par value, or $30 per share, involved a cash payment of.............. 241,620.00
Interest from October 18, 1894 to May 21, 1895......... 16,413.78

Total .................. $709,953.78

The foregoing sum was distributed by Pacific Improvement Company as follows:

|  | Principal. | Interest. | Total. |
| --- | --- | --- | --- |
| For 200 shares at 60 belonging to Pacific Company | $ 12,000 | $ 284 00 | $ 12,284.00 |
| Lawrence Turnure, 58 shares at 60 | 3,480 | 82.36 | 3,562.36 |
| Thomas E. Stillman, 10 shares at 60 | 600 | 14.20 | 614.20 |
| I. B. Newcombe & Co. | 319,680 | 7,565.76 | 327,245.76 |
| C. W. Weidenfeld | 357,780 | 8,467.46 | 366,247.46 |
|  | $693,540 | $16,413.78 | $709,953.78 |

Checks were produced dated May 21, 1895, drawn by F. H. Davis, agent of Pacific Improvement Company, for $3,562.36 to Lawrence Turnure, for $614.20 to Thos. E. Stillman, for $327,245.76 to I. B. Newcombe & Co., and for $366,247.46 to C. W. Weidenfeld. These, with the $12,284 retained for the purchase price of 200 shares belonging to the Pacific Improvement Company, exactly totaled the amount paid by Rogers and Moore & Schley for the shares of Citizens' Gas and Brooklyn Gas Light stock that were sold. It is impossible that these items should have aggregated $709,953.78 to a penny, if they had not really represented a distribution of that sum. It all coincides perfectly with the old Davis memorandum. But Weidenfeld somewhat vaguely claims or perhaps suggests that the checks for $327,245.76 and $366,247.46 were repaid by the firm of I. B. Newcombe, or the plaintiff, on the same day that they were received, and were mere wash transactions.

We cannot see even a scintilla of proof leading to an inference that there was any repayment of a sum corresponding with the check for $366,247.46. There was a deposit of $327,245.76 in the account of the Pacific Improvement Company with the Bank of America which plaintiff says is explained by no credit to it on bills or accounts receivable. But it appears from the cashbook and the statement of bills receivable that Weidenfeld and his firm were credited with $479,699 and interest amounting to $13,531.58, upon their loan from the Pacific Improvement Company, making an aggregate sum of $493,230.58. The testimony of the accountant, Flint, shows that $165,984.82 was necessarily one of the elements of a deposit item on May 21, 1895, of $609,525.14 in the Bank of America. This, added to $327,245.76, deposited by the defendant on the same date, as above set forth, makes up a total of $493,230.58 and shows that these sums returned by plaintiff, or his firm, on May 21, 1895, were not wash transactions, but payments to reduce their loans with the Pacific Improvement Company, for they exactly correspond with the credits in the cashbook. It would be incredible that the latter company should allow Weidenfeld, or his firm, which then owed it over $4,000,000 and was in liquidation, to walk off with the proceeds of the Weidenfeld stock, a large part of which was used to secure loans held by the company, without substituting cash for collateral withdrawn. The record plainly shows that it did not neglect the ordinary precautions of businessmen, though it did make Weidenfeld a further loan of $200,000 the same day, and allowed him, after making the payment of $165,984.82, to retain a bal-

ance from the check of $366,247.46, paid him for his gas stock, amounting to $200,262.64.

But it is said that the stock sold to Rogers and Moore & Schley was Weidenfeld's stock and that the payment of $327,245.76 to his firm of Newcombe & Co. was no acquittance of an obligation to him. It must be borne in mind, however, that $262,747.39 was required to take up the 4,863 shares of Citizens' Gas stock that belonged to Weidenfeld, but were collateral in the $4,000,000 loan made by the Pacific Improvement Company to his firm, that $48,985.50 was required to satisfy the other items credited to that firm on the cashbook, and that $3,386.24 was required to make the payments of interest credited thereon to the latter. After the application of these three items aggregating $315,119.11, the balance of $327,245.76, or $12,126.63, was evidently applied as part of the credit of $178,111.45, to Weidenfeld, appearing in the cashbook, for we find that Weidenfeld's payment of $165,984.82 already mentioned, and this item of $12,126.63, exactly equal the total credit of $178,111.45.

In addition to the credits upon the $4,000,-000 loan, there was proof that other collateral notes of I. B. Newcombe & Co. for $20,000 and $23,000, secured in part by gas stocks had to be paid off on May 21, 1895, in order to get the stocks for delivery.

While it is true that there is no credit appearing on the cashbook or in any account of bills receivable of exactly $327,245.76, there is the clear proof of payments for account of Weidenfeld and his firm which exhausted it.

After twenty-seven years of practical acquiescence on Weidenfeld's part in the settlement of May 21, 1895, it is hard to suppose that the payment of $327,245.76 to his firm, and the other transactions with it, were not altogether with his knowledge and approval, especially as they largely consisted of the reduction of loans to a firm in liquidation carrying collateral needed for delivery to Rogers and Moore & Schley in order to fulfill Weidenfeld's contract.

The vague testimony of Weidenfeld that to "his best recollection" he was not paid any part of the $709,953.17, for which this action was brought, would have been too unsubstantial a basis to support a verdict if one had been returned for him. The formidable documentary record showing payment, the years of delay in asserting his claim, and the lack of evidence of any substantial weight in support of it, imperatively called for the direction of a verdict for the defendant. Small v. Lamborn, 267 U. S. 248, 45 S. Ct. 300, 69 L. Ed. 597; McGuire v. Blount, 199 U. S. 142, 26 S. Ct. 1, 50 L. Ed. 125. If such a verdict should have been directed, a verdict to the same effect, even though rendered upon a wrong charge as to the defense of set-off, because the claim sought to be set off was outlawed, must stand.

While payment is an affirmative defense which the defendant had to assume, in our opinion it fully sustained the burden. In this connection, it must be remembered that the distribution checks taken in connection with the Davis memorandum show that the moneys collected by the defendant were paid out to the plaintiff, or his firm, to the extent of their entire interest in the sale to Rogers and Moore & Schley. For the reasons already given, they must be regarded as final payments for Weidenfeld's account. If he seeks to establish that they were not payments, but only exchanges, it is for him to come forward with satisfactory proof of this, and none has been given. Moreover where, as in this case, payment has once been shown of the exact amount of the claim sued upon, return checks, even though of like amounts, are not persuasive evidence that the original payment, or any part of it, was canceled and that an indebtedness to Weidenfeld arose. His firm *in liquidation* owed the defendant millions of dollars and he had himself been calling upon it for loans (Exhibits V–1 and BB) and was indebted to it in substantial amount. His partner Newcombe had apparently no financial strength. (Exhibit Y–2). In these circumstances it is most unlikely that the defendant should create a large indebtedness to Weidenfeld personally as he seems to claim.

It is unnecessary to discuss the defense of set-off or the propriety of leaving that defense to the jury. On the record, a verdict should have been directed for the Pacific Improvement Company because the defense of payment was established. Rulings as to set-off, whether right or wrong, were therefore immaterial. We have examined the assignments of error, and find nothing in the record prejudicial to appellant.

Judgment affirmed.