**EVANS v. UNITED STATES.**

No. 1597.

District Court, D. Idaho, S. D.

Feb. 3, 1934.

Hawley & Worthwine, of Boise, Idaho, for plaintiff.

John A. Carver, U. S. Atty., E. H. Casterlin, Asst. U. S. Atty., and R. L. Slaughter, Atty., of U. S. Department of Justice, all of Boise, Idaho.

CAVANAH, District Judge.

At the close of all the evidence, the defendant requested the court to direct a verdict in its favor, which was granted. The plaintiff now moves for a new trial, and his principal assertion is that, while the policy was in force, he became totally and permanently disabled, and that there was substantial evidence to warrant the submission of that question to the jury. One other ground is urged in the motion, that Dr. Stewart should have been permitted to have given his expert opinion upon the hypothetical question.

Although not tenable, on the argument and in counsel's brief other questions are urged which are not raised by the motion and may not be considered.

As in this class of cases a request for a directed verdict is generally made in this district, the court deems it necessary to endeavor to lay down the rule governing when a directed verdict should be, and should not be, granted.

The rule testing the direction of a verdict as recognized by the federal courts is: "Where the evidence is undisputed, or of such conclusive character that if a verdict were returned for one party, whether plaintiff or defendant, it would have to be set aside in the exercise of a sound judicial discretion, a verdict may and should be directed for the other party," and not where there is scintilla or modicum of conflict in evidence. Small Company v. Lamborn & Company, 267 U. S. 248, 254, 45 S. Ct. 300, 69 L. Ed. 597.

In Slocum v. New York Life Ins. Co., 228 U. S. 364, 369, 33 S. Ct. 523, 525, 57 L. Ed. 879, Ann. Cas. 1914D, 1029, the Supreme Court again recognized the mode of invoking the application of the rule, and said: "As a preliminary to the consideration of the first question it may be well to repeat what this court often has said, that when, on the trial of the issues of fact in an action at law before a Federal court and a jury, the evidence, with all the inferences that justifiably could be drawn from it, does not constitute a sufficient basis for a verdict for the plaintiff or the defendant, as the case may be, so that such a verdict, if returned, would have to be set aside, the court may and should direct a verdict for the other party."

In Gunning v. Cooley, 281 U. S. 90, 50 S. Ct. 231, 233, 74 L. Ed. 720, in review of its prior decisions, it was said by Mr. Justice Butler, who spoke for the court:

"A mere scintilla of evidence is not enough to require the submission of an issue to the jury. The decisions establish a more reasonable rule 'that in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.' Schuylkill & D. Improvement Company v. Munson, 14 Wall. 442, 448, 20 L. Ed. 867; Pleasants v. Fant, 22 Wall. 116, 122, 22 L. Ed. 780. * * *

"Where uncertainty as to the existence of negligence arises from a conflict in the testimony or because, the facts being undisputed, fair-minded men will honestly draw different conclusions from them, the question is not one of law but of fact to be settled by the jury. Richmond & Danville Railroad Co. v. Pow-

ers, 149 U. S. 43, 45, 13 S. Ct. 748, 37 L. Ed. 642.

"Where the evidence upon any issue is all on one side or so overwhelmingly on one side as to leave no room to doubt what the fact is, the court should give a peremptory instruction to the jury. * * *

"The burden was on plaintiff to establish the negligence and injury alleged; and, if the evidence failed adequately to support either element, defendant's motion should have been granted. * * * "

Compare Herbert v. Butler, 97 U. S. 319, 24 L. Ed. 958; McGuire v. Blount, 199 U. S. 142, 26 S. Ct. 1, 50 L. Ed. 125; Empire State Cattle Co. v. Atchison, T. & S. F. Ry. Co., 210 U. S. 1, 28 S. Ct. 607, 52 L. Ed. 931, 15 Ann. Cas. 70. These views are in accord with the numerous decisions of the Ninth Circuit Court of Appeals where it is said: "The test to be applied in such a case, of course, is not whether the evidence brings conviction in the mind of the trial judge; it is 'whether or not the evidence to support a directed verdict as requested, was so conclusive that the trial court in the exercise of a sound judicial discretion should not sustain a verdict for the opposing party.' (Cases cited.)" Sorvik v. United States, 52 F.(2d) 406, 410; Nichols v. United States (C. C. A.) 68 F.(2d) 597 (decided January 24, 1934); United States Fidelity & Guaranty Company v. Blake (C. C. A.) 285 F. 449–452; United States v. Burke (C. C. A.) 50 F.(2d) 653.

While some of the decisions say that the court does not weigh the evidence upon a motion for a directed verdict, but it must inquire whether there was sufficient evidence of such a conclusive character as to sustain the verdict, and, if not, its duty is, in the exercise of a sound judicial discretion, to grant a new trial, and, if there is substantial evidence both for the plaintiff and the defendant, it is for the jury to determine what facts are established. This reasoning, considered with the thought expressed by the Supreme Court that, should the evidence be of a conclusive character and a verdict were returned for one party, whether plaintiff or defendant, it would have to be set aside by the court in the exercise of a sound judicial discretion, requires the court to determine the conclusiveness of the evidence. Does then the evidence in the present case disclose that it is of such a conclusive character that the plaintiff should not recover after the court has exercised a sound judicial discretion, and not where there may be a conflict in, or some evidence in support of, plaintiff's claim?

At the time the plaintiff enlisted in the Army in July, 1918, he had only received a fifth grade education, without training for any occupation or profession, and had been engaged in mining and farming. He obtained war risk insurance against total permanent disability, which lapsed for nonpayment of premiums. While in the Army, he was wounded in action in October, 1918, by being struck first on the left side of his head with a high explosive shell and again with a shell which struck his side, hip, fingers, and broke his left arm. He was taken to a hospital in France and pieces of loose bones were removed from his arm and pieces of iron from his neck. After arriving in the United States, he was taken to different hospitals, and another piece of iron was taken from his arm. His service record shows that in October, 1918, he was given a diagnosis of a hemorrhage carotid, and had an operation which was the ligation of the external carotid left. Since his return from the Army, he has frequently made efforts to work at mining and farming, but was required to quit within a short time on account of being weak and dizzy. He has not been able, since returning home, to follow continuously any occupation. No work record appears which would show that he was able to follow continuously an occupation within the meaning of the policy and the law. The disability alleged in his complaint is that he was wounded in and about his head, ears, arm, and neck, causing an injury to, and destruction of, flesh, bone, tissues, blood vessels, nerves, veins, and arteries, and a partial loss of hearing. At the argument on the motion it was conceded that the claim of disability of hearing and the wound in the left arm had not been established by the proof, leaving then the remaining contention of disability by reason of shell striking plaintiff on the left side of his head and neck, severing the artery which supplies blood to the brain, causing him to become totally and permanently disabled. The function of the brain is dependent upon the carotid artery, which furnishes the brain with the nutrition necessary to carry on the function.

The inquiry then is, Under the proof, is the plaintiff totally and permanently disabled as the result of the wound he received on the left side of his head and neck which caused the hemorrhage and the tying off of the artery? One would think that the determination of that question is within the field of the medical testimony, as a lay witness would not be versed as to what effect such a condition would have on the functioning of the brain or body. So we have to go to the

testimony of the doctors, and, when we do so, we find a conflict in that respect. Dr. Stewart and Dr. Budge, who made an examination of the plaintiff, assert that they found him totally and permanently disabled, and was so at the time of his discharge from the Army as the result of a gunshot wound which caused the hemorrhage and severing of the carotid artery on the left side of his head and neck, while other doctors testified for the defendant that he was not totally and permanently disabled, as his brain and spinal cord functioned normally. While one of the opinions of Dr. Stewart was based on the history given to him by the plaintiff at the time he examined him and was stricken because he expected to testify in the case, yet we find that he gave further testimony as to his physical findings and his opinion as to what effect the tying off of the artery has upon the functioning of the brain, which in some respects corroborates the opinion of Dr. Budge. These two witnesses made an examination of the plaintiff, and found him to be in the condition they testified to. At the close of the evidence, I had the impression that the medical testimony overwhelmingly established normal functioning of the brain of the plaintiff and no disability as to use of arm or hearing. But, upon a careful reading of that portion of the testimony of Dr. Stewart which was not stricken together with Dr. Budge's, considered in connection with the facts and circumstances rightly to be taken as proof which go to establishing the fact that the plaintiff could not continuously follow a substantially gainful occupation, I am now forced to the thought that a substantial conflict exists in the evidence, and the evidence is not of such a conclusive character as to bring the case within the above-stated rule warranting the giving of the directed verdict, and therefore a new trial is granted.