## LAWTON v. CARPENTER et al.

(Circuit Court of Appeals, Fourth Circuit. February 15, 1912.)

### No. 1,047.

APPEAL AND ERROR (§ 866*)—REVIEW—VERDICT—REQUEST FOR DIRECTION BY BOTH PARTIES.

Where at the close of the evidence, which was conflicting, both parties moved for a directed verdict, and neither requested special instructions in addition thereto in the event the peremptory instructions were denied, such requests amounted to a stipulation to submit the case to the court on the facts, and hence, the court having directed a verdict for plaintiff, the Court of Appeals on a writ of error was limited to a consideration of the correctness of the court's finding on the law, and must affirm if there was any evidence to support it.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3467–3475; Dec. Dig. § 866.*]

Connor, District Judge, dissenting.

In Error to the Circuit Court of the United States for the District of South Carolina, at Greenville.

Action by N. Leslie Carpenter and others, trading under the firm name of Carpenter, Baggot & Co., against A. W. Lawton. Judgment for plaintiffs, and defendant brings error. Affirmed.

This is an action at law instituted in the Circuit Court of the United States for the District of South Carolina to recover the sum of $4,621.69. It is alleged in the complaint that the liability of the defendant was that of surety on a note executed and delivered to the plaintiffs by the Lawton-Simpson Company, a Georgia corporation, of which the defendant was vice president and manager. The defendant below defended on the ground that, as alleged by him, the note indorsed by him, the basis of the cause of action, was void, being based upon an illegal consideration, the illegality urged being that the note was given by the Lawton-Simpson Company for the purchase of cotton for future delivery on the New York and New Orleans Cotton Exchanges, it not being the intention of either of the parties to said contracts that the cotton so purchased should be actually delivered, but were merely speculative transactions in the price of cotton, and that this fact was known by the plaintiffs at the time of the making of the contracts for the purchase of the cotton for the account of Lawton-Simpson Company. After all the evidence had been taken in the lower court, counsel for the plaintiffs made a motion for a directed verdict in their behalf, after which a similar motion was made by counsel for the defendants. The court directed a verdict in favor of the plaintiffs on which judgment was duly entered, from which judgment counsel for the defendant sued out a writ of error, and the case is now before this court upon certain assignments of error.

Joseph A. McCullough (Garrard & Gazan and McCullough & Blythe, on the brief), for plaintiff in error.

Joseph E. Johnson and J. W. Vincent (Johnson & Johnson, on the brief), for defendants in error.

Before PRITCHARD, Circuit Judge, and McDOWELL and CONNOR, District Judges.

PRITCHARD, Circuit Judge (after stating the facts as above). For the purpose of convenience the plaintiff in error will hereafter

be referred to as the defendant, and the defendant in error as the plaintiff; that being the relative positions of the parties in the court below.

There are a number of assignments of error, but it is insisted by the plaintiff that, inasmuch as both parties made motions for the direction of a verdict, they thereby submitted all questions of law and fact to the court, and, having directed a verdict in favor of the plaintiffs, the court is presumed to have found all facts necessary to a judgment for them. This question has been passed upon by the Supreme Court of the United States in the case of Beuttell v. Magone, 157 U. S. 154, 15 Sup. Ct. 566, 39 L. Ed. 654. In that case, Mr. Justice White, who delivered the opinion of the court, in discussing this question, said:

"The contention is advanced that, as each party below requested the court to instruct the jury to return a verdict in his favor, this was equivalent to a stipulation waiving a jury and submitting the case to decision of the court. From this premise two conclusions are deduced: First, that there being no written stipulation, the decision below cannot be reviewed upon writ of error; second, that, even if the request in open court, made by both parties, be treated as a written stipulation, the correctness of the decision below cannot be examined, because it is in the form of a general finding on the whole case, and findings of the court upon the evidence are reviewable only when they are special. The request, made to the court by each party to instruct the jury to render a verdict in his favor, was not equivalent to a submission of the case to the court, without the intervention of a jury, within the intendment of Rev. Stat. §§ 649, 700 [U. S. Comp. St. 1901, pp. 525, 570]. As, however, both parties asked the court to instruct a verdict, both affirmed that there was no disputed question of fact which could operate to deflect or control the question of law. This was necessarily a request that the court find the facts, and the parties are, therefore, concluded by the finding made by the court, upon which the resulting instruction of law was given. The facts having been thus submitted to the court, we are limited in reviewing its action to the consideration of the correctness of the finding on the law, and must affirm if there be any evidence in support thereof. Lehnen v. Dickson, 148 U. S. 71 [13 Sup. Ct. 481, 37 L. Ed. 373]; Runkle v. Burnham, 153 U. S. 216 [14 Sup. Ct. 837, 38 L. Ed. 694]."

The same question was also passed upon by this court in the case of Charlotte National Bank of Charlotte v. Southern Railway Company, 179 Fed. 769, 103 C. C. A. 261. Judge Goff, speaking for the court in this case, said:

"We are impelled to the conclusion that the learned judge of the court below was in error when he held that the rule announced by the Supreme Court in Beuttell v. Magone, 157 U. S. 154, 15 Sup. Ct. 566, 39 L. Ed. 654, was applicable to the conditions shown by the record to have existed in the case at bar at the time he directed the verdict complained of. It appears that not only the plaintiff, but also the defendant below, at the close of the testimony, requested peremptory instructions in their favor, and that they also at the same time asked for special instructions—to be given in the event the peremptory requests were denied—some of them relating to the conflicting evidence from which it was apparent that divergent inferences could be drawn. * * *"

In that case it appears that the plaintiff as well as the defendant, at the close of the testimony, requested the court to give peremptory instructions in their favor. However, both plaintiff and defendant at the same time requested that the court give special instructions in the event the peremptory instructions were denied. Many of these

instructions related to conflicting evidence, and it was obvious that more than one inference could be drawn from the same. The request for special instructions, and, in addition thereto, peremptory instructions, clearly distinguishes that case from the case of Beuttell v. Magone, supra.

The decision in the case of the Charlotte National Bank of Charlotte v. Southern Railway Company, supra, is in harmony with the case of Empire State Cattle Company v. Atchison, Topeka & Santa Fé Railway Company, 210 U. S. 1, 28 Sup. Ct. 607, 52 L. Ed. 931, 15 Ann. Cas. 70, in which the court, among other things, said:

"* * * It was settled in Beuttell v. Magone, supra, that, where both parties request peremptory instructions and do nothing more, they thereby assume the facts to be undisputed, and in effect submit to the trial judge the determination of the inferences proper to be drawn from the same. But nothing in that ruling sustains the view that a party may not request a peremptory instruction, and yet, upon the refusal of the court to give it insist, by appropriate requests, upon the submission of the case to the jury, where the evidence is conflicting or the inferences to be drawn from the testimony are divergent. To hold the contrary would unduly extend the doctrine of Beuttell v. Magone, by causing it to embrace a case not within the ruling of that case made. The distinction between a case like the one before us and that which was under consideration in Beuttell v. Magone has been pointed out in several recent decisions of Circuit Courts of Appeals. It was accurately noted in an opinion delivered by Circuit Judge Severens, speaking for the Circuit Court of Appeals for the Sixth Circuit, in Minahan v. Grand Trunk Railway Company, 138 Fed. 37, 41 [70 C. C. A. 463], and was also lucidly stated in the concurring opinion of Shelby, Circuit Judge, in McCormick v. National City Bank of Waco, 142 Fed. 132 [73 C. C. A. 350, 6 Ann. Cas. 544]. * * *"

These cases, however, are not analogous to the case at bar. There the parties requested the court to submit certain instructions to the jury in addition to the peremptory instructions. In this case counsel for the plaintiffs moved for judgment upon the facts, and a similar motion was made by counsel for the defendant. It was evidently the intention of counsel for both parties to have the court pass upon the facts of the case, and consequently all facts were submitted to the court, which clearly brings it within the rule announced in the case of Beuttell v. Magone, supra. If the doctrine in Beuttell v. Magone rested on that case alone, we might well restrict the doctrine to cases in which there is no conflict of evidence. But Sena v. American Co., 220 U. S. 497, 501, 31 Sup. Ct. 488, 55 L. Ed. 559, is a case in which the doctrine of Beuttell v. Magone was held applicable, and in that case there was conflicting testimony on an important point in the case —the location of plaintiff's southern boundary. "The southern boundary of Leyba depended on contradictory testimony as to the existence of an arroyo of the Cuesta del Oregans in the neighborhood, and was thought by the trial judge not to be made out." 220 U. S. 500, 31 Sup. Ct. 490, 55 L. Ed. 559.

At the close of the evidence we find the following statements appearing in the record:

"Mr. Vincent: I wish to make a motion for the direction of a verdict for the plaintiffs. My motion is based upon the general ground that, upon the whole case, the pleadings, and testimony, there is no evidence upon which a jury can find a verdict for the defendant. I even wish to take the extreme

position that there is no evidence, although the rule in this court is that if there is a scintilla of evidence which would warrant the jury in finding a verdict for the defendant that the case should go to the jury; but we submit that there is no evidence upon which they could find a verdict for the defendant.

"Court: I will hear the other side. I may say that my present view is that this case is controlled by the case of Carpenter and Springs, almost identical with that I had the view at the time that case was tried, which I suppose, the counsel for the defendant has, that it was a question for the jury, but the Circuit Court of Appeals held that I was in error, and I should have directed a verdict. Now, if you can show me that this case differs from that case, I will hear you on that point, but there does not seem to me to be any other question in the case. In that case there was a note given closing the transaction, and in this case a note was given in part. In that case the defendant testified that it was never his intention to receive the actual cotton, and there was no contention in that case, nor is there any here, that the defendant notified the plaintiff that it was not his intention to receive the cotton, and upon that state of facts the court held that it was the duty of the court below to direct a verdict. There does not seem to me to be any question left, but I will hear you if you can show that this case differs from that.

"Mr. Garrard: We don't think that there is any doubt about that as a matter of fact, in the light of the evidence here, that your honor could not direct a verdict. A very significant fact in the Springs Case [154 Fed. 487, 83 C. C. A. 327] is that there was no evidence offered by the defendant that went to show that there was knowledge on the part of plaintiffs of the intention of the defendant not to pay except on differences. Now, the case in 154 Fed. [83 C. C. A.], the Springs Case, states that the court has heretofore construed this statute and defines the law applicable to this case, and refers to [Parker & Co. v. Moore] 115 Fed. 794 [53 C. C. A. 369], and I don't think that law controls this.

"Mr. McCullough: In order that the court may have both of these contentions—there are five or six or eight or ten other notes involved—and rather than have this grind before different juries, I would much prefer personally to have a decision one way or the other and let the Circuit Court of Appeals decide whether or not under those facts there is a case of liability, so, if I were the defendant, I would prefer to have your honor grant this motion, provided we get our grounds in the record. We move your honor to direct a verdict for the defendant upon these grounds: (1) The testimony fails to show that the plaintiffs bought the cotton in question here and to secure the losses on account of which the notes in question were executed. (2) The testimony fails to show that the plaintiffs paid the money which they are seeking to recover here as evidenced by the notes, or failed to pay any sum whatsoever on account of the contracts in question. (3) The only reasonable inference to be drawn from the evidence is that this was a wagering contract, that these were wagering contracts, and that the plaintiff had knowledge of that fact before the transactions were entered into. Upon those three grounds we move for a directed verdict in favor of the defendant."

Thus it appears that both parties submitted the cause to the determination of the court. While there was some conflict of evidence, the defendant below, not only did not offer special instructions to be given if his motion for a directed verdict was overruled, but he clearly submitted the case for decision by the court without the intervention of the jury. Under such circumstances, as there was some evidence supporting the judgment below, we must affirm.

Affirmed.

CONNOR, District Judge (dissenting). The record shows, among other things, that defendants in error who, for convenience, I will call plaintiffs, sued plaintiff in error who, for the same reason, I will call

defendant, as indorser on a promissory note for $4,496.66, executed by Lawton-Simpson Company, a corporation, payable to plaintiffs. Defendant admitted the execution of the note and the indorsement thereof. By way of defense and plea he alleged:

"That the consideration of said note which was given by Lawton-Simpson Company, and indorsed by this defendant, was money alleged by the plaintiffs to have been lost by them by reason of various contracts claimed by plaintiff to have been entered into by them, as brokers, between the said Lawton-Simpson Company for the purchase, from various parties, to this defendant unknown, of cotton for future delivery, whereas, in truth and in fact, any contracts which said plaintiffs may have entered into on behalf of said Lawton-Simpson Company were not for actual sale of any cotton whatever, and it was never intended by either of the parties to any of said contracts that the purchaser was to receive, or the seller deliver, any cotton whatever, but said contracts were purely wagering contracts covering dealings in cotton futures."

He further alleged that:

"Said plaintiffs knew such to be the fact for that this defendant, in arranging for the various transactions on behalf of said Lawton-Simpson Company, informed the said plaintiffs that the line of credit which he sought to establish with the said plaintiffs was for handling speculative contracts of customers of Lawton-Simpson Company, and it was understood between plaintiffs and the said Lawton-Simpson Company and this defendant that settlement was to be made between said parties by one party paying to the other the difference between the contract price and the price of said cotton futures, according to the fluctuations in the market."

He concludes his plea with the averment that, for the reasons set forth, the said note was utterly void, etc. The case went to trial before the court and jury upon the complaint and answer.

For the purpose of sustaining his answer and plea, defendant testified in his own behalf. I do not deem it necessary, at this point, to set forth his testimony. I think that, if true and so accepted by the jury, his evidence established the facts averred in his answer. Mr. Tate, one of the plaintiffs, testified in behalf of plaintiffs, and in many material respects contradicted defendant. It may be taken pro hac vice that if his testimony was accepted by the jury as true, or left the minds of the jury in such doubt as to destroy the probative force of defendant's testimony, they should have found the issue for the plaintiffs. They were the only witnesses introduced. The essential averments of the answer were disputed, and the evidence in regard to them contradictory. The defendant's bill of exceptions shows that:

"At the conclusion of all the testimony the defendants in error moved the court to direct a verdict for them in the amount sued for, upon the ground that there was not a scintilla of evidence in the case to sustain defendants' defense, and there were no conflicts in the testimony which should go to the jury.

"J. W. Vincent, counsel for defendants in error, did not conclude his argument for the direction of a verdict for defendants in error, but was interrupted by a statement from his honor, the presiding judge, that he was inclined to grant the motion for the direction of a verdict in favor of the defendants in error.

"The grounds of the motion for the direction of a verdict for the defendants in error were: 'That the plaintiff in error had introduced no evidence to show illegality of the contracts in question, and hence there could be no verdict for plaintiff in error; this ground in addition to the one assigned

by his honor, the presiding judge, being the sole ground on which said motion was based.' Thereupon the court announced that, under the authority of the case of Springs & Co. v. Carpenter, 154 Fed. 487 [83 C. C. A. 327], he was inclined to grant the said motion, but would hear from the plaintiff in error. Col. Garrard, for the plaintiff in error, argued at length in opposition to the said motion, contending that the case at bar was not controlled by the said case; that there were conflicting questions of fact here which should be submitted to the jury upon the main issue, to wit, did the defendants in error have knowledge of the fact that the said contracts were intended to be wagering contracts; that it was understood by both parties before the contracts were entered into and that the solution of this question would depend upon whether the jury accepted the testimony on behalf of the plaintiff in error or the testimony on behalf of the defendants in error; that the conflict was sharp, and that the case of Springs & Co. v. Carpenter therefore was not conclusive of this case, there being no testimony in that case tending to show that the plaintiff had knowledge of defendants' intention merely to speculate. At the conclusion of his argument the court did not hear from the defendant in error in reply, but proceeded to announce its decision to grant the said motion, whereupon Jos. A. McCullough, attorney for plaintiff in error, interrupted the court, and announced that, in order that the record might set forth also the contentions of the plaintiff in error, he would move the court to direct a verdict in favor of the plaintiff in error upon the grounds which appear in the transcript of the record.

"The court then proceeded to direct a verdict in favor of the defendants in error upon the ground that, giving full effect to the testimony of the plaintiff in error, said testimony was not sufficient to differentiate this case from the case of Springs & Co. v. Carpenter, 154 Fed. 487 [83 C. C. A. 327], which case he declared was, in all essential particulars, like the case at bar, and under the authority of which the court felt compelled to direct a verdict in plaintiff's favor for the reasons orally stated at the time. Plaintiff in error then and there excepted to the ruling of the court directing the jury to bring in a verdict for the plaintiff, and, inasmuch as the facts aforesaid and the decision of the court do not appear on record, the plaintiff in error prays that its bill of exceptions be allowed," which was done.

Defendant, by his assignments of error, saved his exceptions.

In the opinion of the court, the case comes within the doctrine of Beuttell v. Magone, 157 U. S. 154, 15 Sup. Ct. 566, 39 L. Ed. 654, and, upon the authority of that case, it must be assumed that by their action both parties waived a jury trial and submitted the case to the judge to find the facts, and, further, that it must be assumed that the judge found such facts as were necessary to sustain the conclusion of law reached by him, and which passed into the directed verdict. If these contentions are correct, I concede that the judgment below should be affirmed. I am of the opinion that the record does not bring this case within the rule of practice as originally announced in Beuttell v. Magone, supra. I also think that the decision in that case has been so explained and modified by later decisions that this case does not come within it. I am therefore of the opinion that in the light of the testimony the issues raised by the pleadings should have been submitted to the jury under appropriate instructions as to the law.

It cannot be doubted that at the conclusion of the testimony the defendant was entitled to have the issues submitted to the jury, provided there was any substantial evidence which, if found to be true, entitled him to a verdict. This right of trial by jury he was entitled to, unless in some way, recognized by the law, he waived it. This elementary

truth is well stated by Mr. Justice Harlan in Hodges v. Easton, 106 U. S. 408, 1 Sup. Ct. 307, 27 L. Ed. 169. He says:

"It was the province of the jury to pass upon the issues of fact, and the right of the defendants to have this done was secured by the Constitution. They might have waived that right, but it could not have been taken away by the court. Upon the trial, if all the facts essential to a recovery were undisputed, or if they so conclusively established the cause of action as to have authorized the withdrawal of the case altogether from the jury by a peremptory instruction to find for plaintiffs, it would still have been necessary that the jury make its verdict, albeit, in conformity with the order of the court. * * * It has been often said by this court that the trial by jury is a fundamental guarantee of the rights and liberties of the people. Consequently every reasonable presumption should be indulged against its waiver."

Congress has prescribed but one way by which it may be waived; i. e., a writing signed by the parties, or their counsel, and filed with the clerk. Rev. Stat. § 649; 4 Fed. Stat. Anno. 393. It is conceded that by demurring to the evidence, or moving for a peremptory instruction, either party may challenge the sufficiency of the evidence relied upon by the other to deflect or control the law. The effect of this procedure upon the rights of the parties and the function of the court is too well settled to require or justify the citation of authority. It is elementary. In Beuttell v. Magone, supra, the present Chief Justice first announced the rule of practice in the federal courts. Both parties having requested a peremptory instruction in their favor, he says:

"The request made to the court by each party to instruct the jury to render a verdict in his favor was not equivalent to a submission of the case to the court without the intervention of a jury within the intendment of Rev. Stat. §§ 649–700. As, however, both parties asked the court to instruct a verdict, both affirmed that there was no disputed question of fact, which could operate to deflect or control the question of law. This was necessarily a request that the court find the facts, and the parties are, therefore, concluded by the finding made by the court, upon which the resulting instruction of law was given. The facts being thus submitted to the court, we are limited in reviewing its action to the consideration of the correctness of the finding on the law, and must affirm, if there be any evidence in support thereof."

Two cases are cited in support, or illustration, of the rule. In Lehnen v. Dickson, 148 U. S. 71, 13 Sup. Ct. 481, 37 L. Ed. 373, it appears that "the case was tried by the court without a jury." The trial by jury was waived under section 649, Rev. Stat. No question of instruction is, or could be, presented. In Runkle v. Burnham, 153 U. S. 216, 14 Sup. Ct. 837, 38 L. Ed. 694, it is said: "After issue joined, the issue was, by stipulation, submitted to the court without the intervention of a jury." In Magone's Case the learned justice, immediately following the statement of the rule, says: "There was obviously no disputed question of fact." The discussion of the evidence, with the conclusion reached, shows clearly that the facts were undisputed. Although it is said that the request for peremptory instruction by both parties "is not equivalent to a submission to the court to find the facts," it is manifest from an examination of the decisions of several Circuit Courts of Appeals that the rule has been interpreted as having that effect. In Bradley Timber Co. v. White, 121 Fed. 779, 58

C. C. A. 55, Pardee, Circuit Judge. after discussing numerous exceptions to rulings of the court, in regard to the admission of testimony, refers to the prayer for peremptory instruction by both parties, and says:

"It is equivalent to a request for a finding of facts and if the court directs the jury to find a verdict for one of them, both are concluded on the findings of fact"—citing Magone's Case. supra.

In United States v. Bishop, 125 Fed. 181, 60 C. C. A. 123, Sanborn, Circuit Judge, says:

"The request of both parties to this action for peremptory instructions in their favor relieves us from the consideration of the question whether or not there was any issue of fact which should have been submitted to the jury and make the instruction of the court a conclusive finding in favor of the defendant on every question of fact at issue in the case."

In Phenix Ins. Co. v. Kerr, 129 Fed. 724, 64 C. C. A. 252, 66 L. R. A. 569, Judge Sanborn uses this significant language:

"Where each of the parties to a trial by jury requests the court to charge them to return a verdict in his favor, *he waives his right to any finding or trial of the issues by the jury* and consents that the court shall find the facts and declare the law." (Italics mine.)

The learned judge further says:

"The case is then in the same situation in which it would have been if both parties had filed a written waiver of a jury trial and it had been tried by the court."

In Insurance Co. v. Wisconsin Ry. Co., 134 Fed. 794, 67 C. C. A. 300, Baker, Circuit Judge, says:

"Even if it were conceded, if the uncontradicted evidence had been submitted to them, the jury might properly have drawn inferences of ultimate fact different from those hereinabove stated. nevertheless the judgment must be affirmed. Both parties moved for a directed verdict."

West v. Roberts, 135 Fed. 350, 68 C. C. A. 58, is disposed of by a per curiam opinion to the same effect. It is not until 1905, in Minahan v. Grand Trunk Western Ry. Co., 138 Fed. 37, 70 C. C. A. 463, that we find any discussion of, or attempt to, fix a limit to the rule. It will be noted that in none of the cases cited was there any specific finding of fact by the judge. The assumption is made that he had found sufficient facts to sustain the instruction to the jury. In the Minahan Case, supra, it appears that:

"At the close of the production of the evidence, the counsel for the defendant preferred a request to the court that the jury be directed to return a verdict for that party. This request having been discussed by counsel for the respective parties, the court was proceeding to give its opinion and instructions to the jury, and seemed to indicate, as plaintiff's counsel thought, a purpose to sustain the defendant's request for a positive direction in its favor. Thereupon the court permitted an interruption to allow plaintiff's counsel to put on file certain requests to instruct the jury, and assured the counsel that he should have the benefit of them, and then, after giving its views, directed a verdict for defendant."

The plaintiff's counsel filed 18 requests for instructions; the first being a request for a peremptory instruction to find a verdict for the

plaintiff. The others related to particular matters of law and fact involved in the issue. The plaintiff duly excepted, etc. Upon appeal defendant's counsel invoked the rule announced in Magone's Case. Severens, Circuit Judge, after citing Magone's Case, said:

"In that case there was no disputed question of fact, and it only remained for the court to state to the jury what the facts were, and what the law applicable to those facts was. The language of Mr. Justice White, taken apart from the case before the court, might justify the conclusion which the counsel draws from it. But it would seem that the decision cannot be regarded as furnishing a rule for cases where the evidence is conflicting and where the party, whose request is refused, has coupled with his request other requests directed to particular aspects of the case which repel the implication that the party had consented to a submission of the facts to the court. And in all the cases in which the case of Beuttell v. Magone has been cited in the appellate courts the conditions were the same. There was no disputed question of fact, and there were no special requests. * * * In Beuttell v. Magone it is expressly stated that such request, made by the respective parties, is not the equivalent of a submission of the case to the court without the intervention of a jury, etc. The rule must, therefore, rest upon an implication of consent."

It is interesting to note that Judge Severns stresses the fact that in Magone's Case there were no disputed questions of fact, and that the rule must rest upon an implication of consent. The decision in this case is that where the facts are disputed, and, in addition to the request for a directed verdict, special instructions are asked, the rule in Magone's Case does not apply, and the case should be submitted to the jury. The next case, in order of time, is McCormick v. Nat. City Bank, 142 Fed. 132, 73 C. C. A. 350, 6 Ann. Cas. 544. The court by a per curiam opinion, without stating any facts, held that the case came within the rule. Shelby, Circuit Judge, wrote a concurring opinion. He says:

"I concur in the judgment because I find no reversible error in the record; but I am not of opinion that the plaintiff in error lost any right in this court by merely requesting the trial court to direct a verdict in his favor. The doctrine announced in Beuttell v. Magone, supra, should not be extended to cases in which there are disputed questions of fact *nor* [italics mine] to cases in which the parties ask other instruction in the event the peremptory instructions asked by them are not given."

The learned judge notes that in Magone's Case it was said that there was no disputed question of fact, saying:

"In a case where there is such conflict in the evidence as to require it to be submitted to a jury, there is no reason why, and the Supreme Court does not hold, that a party may not ask for a peremptory instruction in his favor, without depriving himself, if the court decides he is not entitled to it, of the right to have the jury pass on the controverted issue in the case. Although both parties may ask the court to direct the verdict, if there is conflict in the evidence, or conflicting inferences to be drawn from it, the court may properly submit it to the jury [citing authority]. It is not an unusual practice to ask for peremptory instructions, and there is no valid reason why such a request should deprive a party of the constitutional right to have controverted questions of fact tried by jury. The fact that the other party afterwards makes the same request does not affect the question when there is a conflict in the evidence, *nor* (italics mine) in cases where the party prays for other instructions, if his request for a peremptory instruction be denied."

This language, I submit, clarifies the subject very much. It is not, however, perfectly clear to my mind whether the learned judge intends that it shall be so interpreted—that the rule does not apply either, where there are disputed questions of fact, or where special instructions are asked—following the prayer for a peremptory instruction or whether both conditions must exist to take the case out of the rule. It is not necessary, at the close of the testimony, for counsel to ask for any instruction either special or general. When issue is joined upon the pleadings and the jury is impaneled, it is the duty of the court, at the conclusion of the testimony, if in any reasonable aspect of the evidence a finding by the jury would affect the right of either party to the judgment, to submit the issue to the jury under proper instructions. In Empire State Cattle Co. v. A., T. & S. F. Y. Ry. Co., 147 Fed. 457, 77 C. C. A. 601, the question is again presented. Pollock, District Judge, on the trial (s. c. [C. C.] 135 Fed. 135) delivered a written opinion on the motion for a directed verdict, saying: "The facts are practically undisputed." Circuit Judge Hook, on appeal, after stating the rule in Beuttell v. Magone, says:

"We are of the opinion that when both parties invoke the action of a trial court by requests for a directed verdict, and the request of one of them is accompanied, as in this case, or followed, by requests for other instructions to the jury, such other requests do not, by themselves, amount to a withdrawal of the one for a directed verdict."

Thus we find a radical difference of opinion between the learned judges in regard to the limitations upon the rule. Sanborn, Circuit Judge, in the last case, concurred in the result, but wrote an opinion dissenting from the language quoted. He concurs in Judge Shelby's view in the McCormick Case. In Anderson v. Messenger, 158 Fed. 250, 85 C. C. A. 468, Judge Severns says:

"At the conclusion of the evidence plaintiff and defendant requested the court to charge the jury peremptorily each in his own favor. The court refused the request of the plaintiff, and granted that of the defendant. We are required, by the opinion of the Supreme Court in Beuttell v. Magone, 157 U. S. 154 [15 Sup. Ct. 566, 39 L. Ed. 654], to hold that these mutual requests were the equivalent of a withdrawal of the facts from the jury and a submission of them for a finding by the court. And we must presume that the consequences must be the same as if there had been an original stipulation to try the case without a jury. In that case, where the court makes only a general finding, that finding must stand if there was any evidence on which the court could have properly found the facts necessary to support the judgment."

In the light of the express declaration in Magone's Case, that the prayers by both parties for a peremptory instruction is not the equivalent of a waiver of trial by jury, etc., I confess, with all possible deference, that I am unable to reconcile the language of the learned judges. It is worthy of note that this case was before the court at a former term (146 Fed. 929, 77 C. C. A. 179, 7 L. R. A. [N. S.] 1094), and it is there stated in the opinion written by Judge Severns:

"A stipulation was filed waiving a trial by jury and consenting to a trial by the court. Upon the trial proof of all the material facts was made by mutual stipulations which are incorporated in the bill of exceptions. * * * The case is properly for review to determine whether the judgment is the one *which the facts agreed required.*" (Italics mine.)

The judgment was reversed, and a new trial awarded. It would have seemed, in accordance with the practice prevailing in appellate courts, that the mandate of the court should have directed the lower court to reverse its judgment and render judgment upon the facts agreed in accordance with the opinion. The learned judge (in the opinion in 158 Fed. 252, 85 C. C. A. 470) explained why this was not done. He states, however:

"The principal facts are fully stated in our former opinion, and need not be now repeated. With the exception of those which relate to the assessment and sale of the land for a local improvement, the grading of a street in Toledo, and the deeds issued thereon, the facts exhibited by this record are in all essential particulars the same as those disclosed by the record at the former hearing."

These facts, and a careful examination of the interesting opinion, upon the merits, disclose that there were no disputed questions of fact. It is also noteworthy that the judgment was again reversed, and, notwithstanding the fact that both parties requested peremptory instructions, a new trial was ordered. It is manifest that there was never, in either trial, any disputed question of fact requiring the intervention of a jury. In Mead v. Darling, 159 Fed. 684, 86 C. C. A. 552, the court, in a per curiam opinion, refers to the case of Mead v. Chesbrough, 151 Fed. 998, 81 C. C. A. 184, in which the same questions were involved. A reference to the opinion of Wallace, Circuit Judge, in that case, shows that "each party relied upon the documentary evidence," etc. There was no disputed question of fact—in either case. The question underwent a re-examination in the Supreme Court in the case of Empire Cattle Co. v. Atchison Ry. Co., 210 U. S. 1, 28 Sup. Ct. 607, 52 L. Ed. 931, 15 Ann. Cas. 70. Mr. Justice White, referring to what was said upon the subject in the opinion of the Circuit Court of Appeals, says:

"It was settled in Beuttell v. Magone, supra, that, where both parties request a peremptory instruction *and do nothing more* [italics mine], they thereby assume *the facts to be undisputed*, and, in effect, submit to the trial judge *the inferences* proper to be drawn. But nothing in that ruling sustains the view that a party may not request a peremptory instruction, and yet, upon the refusal of the court to give it, insist, by appropriate requests, upon the submission of the case to the jury, where the evidence is conflicting or the inferences to be drawn therefrom divergent. To hold the contrary would unduly extend the doctrine of Beuttell v. Magone by causing it to embrace a case not within the ruling in that case."

The learned justice quotes the language of Judge Severns in the Minahan Case and of Judge Shelby in the McCormick Case, supra, after which he says:

"From this it follows that the action of the trial court in giving the peremptory instruction to return a verdict for the railway cannot be sustained merely because of the request made by both parties for a peremptory instruction in view of the special requests asked on behalf of the plaintiffs. The correctness, therefore, of the action of the court, in giving the peremptory instruction, depends, not upon the requests which were made on that subject, but upon whether the state of the proof was such as to have authorized the court, in the exercise of a sound discretion to decline to submit the case to the jury. That is to say, the validity of the peremptory instruction must depend upon whether the evidence was so undisputed or

was of such a conclusive character as would have made it the duty of the court to set aside the verdict if the case had been given to the jury and the verdict returned in favor of the plaintiff."

This I understand to be the rule by which the correctness of peremptory instructions is always tested. The authorities in this respect are uniform. In Sena v. American Turquoise Co., 220 U. S. 497, 31 Sup. Ct. 488, 55 L. Ed. 559, the peremptory instructions were asked, and "There was nothing more done." I have examined a number of other cases in which peremptory instructions were given and sustained. It would unduly extend this opinion to cite them all, but I am quite sure that, so far as the record in them discloses, they are in harmony with the thought which is on my mind. In Robertson v. Edelhoff, 132 U. S. 614, 10 Sup. Ct. 186, 33 L. Ed. 477, it is said: "There was no question of fact for the jury, and the defendant did not ask to go to the jury." So in Bevans v. United States, 13 Wall. 56, 20 L. Ed. 531, "there were no disputed facts upon which the jury could pass." This is the uniform rule. It appears that the doctrine in Magone's Case finds its origin, or, at least, its frequent application. in the New York courts. I have not been able to "run it down" by an examination of the decisions. The language of Circuit Judge Lacombe, in Sigua Iron Co. v. Greene, 88 Fed. 210, 31 C. C. A. 477, is of interest. He cites the New York cases. In that case the appellant moved for a directed verdict, and assigned as error the refusal of the court to grant its motion. Without quoting all that is said by Judge Lacombe, it is of interest to note that he does say:

"The circumstances that a party at the close of the case moves the court to direct a verdict in his favor does not, of course, operate to waive any right he may have to go to the jury. Such motion may be made upon the theory that some controlling proposition of law would require a decision in the party's favor, although some, or all, of the disputed facts were decided in his adversary's favor. But, if the court be not convinced as to the soundness of his proposition of law, he is none the less entitled to have his hearing before the triers of the fact upon any disputed material issues of fact in the case, unless in some way or other he waives his right, or leads the court to suppose that he concedes there is no material fact in dispute."

For instance, if the question here was whether the court below was in error in refusing defendant's prayer for instruction, he could not insist, in this court, that quoad that question there were disputed questions of fact, unless, in addition to the prayer and to meet the contingency that it was not given, he had asked to go to the jury upon disputed questions of fact. But here we are not inquiring whether the court below was in error in refusing defendant's instruction, but whether, in the light of what occurred at the trial, the plaintiff was entitled to his peremptory instruction, which is a very different question and to be answered upon very different principles. I do not understand that the request to have disputed questions of fact submitted to the jury must be in writing. It is the well-settled rule that, if there be special and peculiar phases of the testimony which a party wishes the court to submit to the jury, he must ask for them or he cannot assign a failure to do so error. In this case there does not seem to have been any written prayers submitted. I submit that the record

clearly shows at every stage of the trial that defendant's counsel were earnestly and strenuously asserting and insisting that there were disputed questions of fact, the decision of which were vital to a correct conclusion of law—that they were entitled to go to the jury on the "sharp conflict" between the two witnesses, and neither did they ask nor suggest that the judge find the fact, nor did he so understand them. To test the validity of the contention of plaintiffs that defendant has lost, forfeited, or waived his right to a jury trial, it will be well to keep in mind certain essential truths. The rule which operates to deprive a party of his right to a jury trial "must rest upon an implication of consent"—and that "every reasonable presumption will be indulged against a purpose to waive trial by jury." "It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon. Their motto should be obsta principiis." Boyd v. United States, 116 U. S. 616, 6 Sup. Ct. 524, 29 Sup. Ct. 746. The sole statutory provision for doing so requires that the consent must be in writing—signed and filed with the clerk. Conceding that, by asking for a peremptory instruction in his favor, the defendant would have, by implication, consented to waive his right if he had nothing more, I submit that defendant's counsel did something more. When, at the conclusion of the testimony, plaintiff's counsel challenged the sufficiency of defendant's evidence to prevent a verdict in their favor, asserting "that there was not a scintilla of evidence in the case to sustain defendant's defense and there were no conflicts in the testimony which should go to the jury," the judge stated "that he was inclined to grant the motion." Counsel for defendant "argued at length in opposition to said motion, contending, * * * that there were conflicting questions of fact which should be submitted upon the main issue," etc.; that the solution of the questions "would depend whether the jury accepted the testimony in behalf of the defendants in error"; that "the conflict was sharp." Certainly there was nothing in this conduct to suggest, or sustain, an implication either of an admission that there were no disputed questions of fact or of a purpose to consent for the court to find the facts. It was only when the court "proceeded to announce its decision to grant said motion" that one of the counsel "interrupted the court and announced that, in order that the record might set forth the contentions of the plaintiff in error, he would move the court to direct a verdict. in favor of the plaintiff in error." It is manifest that neither the counsel nor the court understood that the conflicting evidence in regard to the disputed questions of fact were submitted to the decision of the court. The record states that, after the argument by defendant's counsel, as above set forth:

"The court then proceeded to direct a verdict in favor of the defendants in error upon the ground, that, *giving full effect to the testimony of the plaintiff in error said testimony was not sufficient to differentiate the case from Springs v. Carpenter*," etc. (Italics mine.)

I submit that to hold in the light of this record that defendant has waived or lost his right to have a jury trial is to invoke a presumption, adopted as a mere rule of practice, to repel a fact appearing of rec-

ord and to impute to defendant's counsel an intention utterly inconsistent with their express declaration sustained by their conduct. Rules of practice, like presumptions, are framed or resorted to for the purpose of promoting an orderly administration of justice, but never to entrench error, in fact, into the trial of causes, so that the real truth of the matter may not be inquired into. It would be doing violence no less to the intention of the learned judge below than to the rights of the defendant to attribute to him a purpose to find the essential question of fact in regard to which there was a "sharp conflict." There is nothing in the record to indicate that he disbelieved the defendant's evidence, but, on the contrary, he expressly states that "giving full effect to the testimony" as a matter of law he fails to make good his defense. It further appears in the record (page 63) that the learned judge, referring to the case of Springs v. Carpenter, tried before him, said:

"I had not any doubt then, and I have not any doubt now, personally, that those were gambling transactions intended to be," etc.

After stating, at length, his view and the reasons why, in deference to what he understood to be the ruling in the Springs Case, he gave the plaintiff's instruction, he concluded:

"But the practical conclusion of the Court of Appeals was that this court ought to have directed a verdict for the plaintiff upon a state of facts almost identical with these," etc.

It was the clearly expressed purpose of the judge that the case should come to this court as upon a demurrer to the evidence, or what is, for the purpose of this discussion, the same thing, a directed verdict. I have at more length than was necessary for the purpose of this opinion discussed the rule of practice invoked in this case, because I think, with all possible deference to my Brethren and other learned judges who have applied it in other cases, there lurks in it, when not correctly interpreted and carefully restricted, danger that parties will find that they have waived their right of trial by jury contrary to their intention, and, upon appeal, denied the right to have peremptory instructions reviewed according to the test uniformly applied by appellate courts. That trial courts have found difficulty in applying the rule is shown by an examination of several of the cases cited, to which may be added the case of Bank v. Railway, 179 Fed. 769, 103 C. C. A. 261. If I am correct in the conclusion that this court should examine the peremptory instruction given by the court below from the viewpoint prescribed by the court in Empire State Cattle Co. v. Railway, supra, I am of the opinion that there was, in the record, evidence proper to be submitted to the jury tending to show that the dealings between plaintiffs and Lawton-Simpson Company were gambling or wagering contracts, and void as against public policy, and that the plaintiffs had knowledge thereof. The conclusion reached by the majority of the court does not involve an examination of this question—it expressly excludes such examination—because that conclusion is based upon a radically different manner of approaching the decision of the case from that which, I think, should guide us. Of

course, if it must be assumed that the judge found all of the disputed questions of fact against the defendant—that is, disbelieved his testimony—there is no error in the legal conclusion reached by him. As, however, the case was presented and argued upon the theory that, conceding defendant's testimony to be true, under the ruling of this court in Springs v. Carpenter, 154 Fed. 487, 83 C. C. A. 327, the plaintiffs are entitled to recover on the note, these questions invite discussion. As we have seen, the sole ground upon which the judge below rested his instruction was the decision of this court in the Springs Case. In order that we may understand just what was decided in that case, it is necessary to examine the decision in Parker v. Moore (C. C.) 111 Fed. 470, to which it refers. That case was tried before Circuit Judge Simonton. On motion for judgment of nonsuit, a written opinion was filed from which it appears that the ruling was based altogether upon the construction of the South Carolina statute. The learned judge, citing Harvey v. Doty, 54 S. C. 382, 32 S. E. 501, says:

"In that case, dealing with a contract for future delivery, the court held that when an agent contracts, in good faith in his own name, with other parties for the sale of property for future delivery, and there is a bona fide intention on the part of the agent and other contracting parties at the time of making the contract to actually deliver on the one hand and actually receive on the other, at the period mentioned in the contract, such agent cannot recover from his principal losses or advances made on such contracts, unless he can show that it was the bona fide intention of his principal at the time of making the contract to actually deliver or to receive the property sold, at the maturity of the contract."

In the absence of evidence to that effect, judgment of nonsuit was entered. On appeal (115 Fed. 799, 53 C. C. A. 369) this court reversed the judgment. It is said by District Judge Keller:

"In the record of the case at bar we do not find any evidence to show that the plaintiffs knew of the intention of the defendants not to receive the cotton bought upon his several orders, *but, even if such evidence had appeared, it would have been for the jury to pass upon.*" (Italics mine.)

So far as applicable to the question now under discussion, this is the sole ground upon which the decision of the case rests. In the Springs Case, 154 Fed. 487, 83 C. C. A. 327, the same defense, as here, was relied upon. Circuit Judge Goff, in writing the opinion of the court, says:

"The plaintiffs (Carpenter & Co.) testified that they had no knowledge of any intention on the part of defendant (Springs) not to receive or deliver cotton when the contracts matured. The evidence offered by defendants did not show knowledge on the part of plaintiffs of the intention of defendants not to receive or deliver the cotton on the maturity of the contracts themselves. Plaintiffs requested a peremptory instruction, which was denied, and the case submitted to the jury."

Referring to the decision in Parker v. Moore, supra, Judge Goff says:

"We do not find it necessary, in the case we now dispose of, to either add to or detract from the conclusion we then reached. We refer to that case as one controlling this. *We find nothing in this record showing that the plaintiffs below knew of the intention of the defendants, if, in fact, they had such intention, not to receive the cotton bought for them under their contracts upon their orders.*" (Italics mine.)

In this condition of the record the court reversed the judgment. We are thus brought to the pivotal point in this case. Was there any evidence, fit to go to the jury, tending to show that the contracts made by the plaintiffs with Lawton-Simpson Company were invalid for the reasons alleged, and that plaintiffs knew, or had notice of, the intention of Lawton-Simpson Company to engage in unlawful or wagering transactions? Whether there is any evidence—in the federal court any sufficient evidence—is always a question for the court; therefore reviewable on appeal. As succinctly as possible, I will endeavor to collate the evidence which in my opinion was sufficient to take the case to the jury. Plaintiffs were, at the date of the note sued on and prior thereto, residents of and engaged in business in New York as cotton brokers. Defendant Lawton prior to the summer of 1909 was a resident of Spartanburg, S. C., engaged in manufacturing fertilizers. During the month of August, 1909, defendant was connected with Lawton-Simpson Company, a corporation doing business in Savannah, Ga., a "cotton factorage business organized by him for the purpose of receiving cotton from the farmers and selling it to exporters on commission." The capital stock of the concern was $25,000, of which $10,000 was paid in. Defendant was vice president and manager. He testifies that he visited New York during the early part of August, 1909, and called upon plaintiffs Carpenter, Baggot & Co.; that he had an interview with Mr. Tate, a member of the plaintiff's firm; that after a reference to some business transactions which he had formerly had with the firm, in which he told Mr. Tate that he objected to being called upon to make bank deposits to cover margins on cotton contracts, "because it would disclose to the bank, with whom I was doing a large credit business, that I had a credit with a speculative house which would be very injurious to me, for the Southern banks looked with great discredit upon any man doing business with a Wall street house," witness further testified:

"I then told him that I had formed the Lawton-Simpson Company in Savannah to do a cotton factorage business, to receive consignments of cotton from the farmers, and to sell it to exporters on the Savannah Cotton Exchange. I told him, furthermore, that quite a number of customers whom we had I knew by previous experience with them that they would want to take speculative flyers on the market, and I would probably do more business with them than I had been doing in the past, and that I would like to get a line of credit with them, so as to avoid being called for any kind of margins, or receive their checks in case a profit might have to be remitted back to us; that I did not want to be passing their checks through the Savannah banks, and I wanted to avoid at each transaction the handling of their checks, and I thought that this credit would avoid a good deal of that, and he asked me how much money would cover it, and I told him I thought to start off about a thousand, simply to avoid the continual transfer of checks backwards and forwards when these contracts occurred; that was about the sum and substance. He called a young man from the back office, and I handed him my business card, and he wrote on the back of it $1,000, and handed it to him, and I immediately went from the main office and gave an order for the purchase or sale of a couple of hundred bales of cotton. That was the commencement of the business relationship with Lawton-Simpson Company and Carpenter, Baggot & Co."

He says: That he told Mr. Tate that they would try to be conservative, and "not to bog in the mælstrom and not get out." That

the "flyers," commonly speaking, is just a bet on the market, if it goes down you lose, had never heard it applied to spot cotton, usually applied to speculative cotton. That the $1,000 was to be used "when he closed out cotton in settling differences." That they had a great many contracts with plaintiff's order by telegraph. That plaintiffs were their brokers. That they never sent to Lawton, Simpson Company any copy of contract "or anything to support their statement that they had bought cotton or that they had sold." That spot cotton was never mentioned between witness and plaintiffs. That witness was in New York a good many times after the conversation in August, 1909 —"that is not a spot market, not so considered." That in dealings of Lawton-Simpson Company in no instance was delivery of actual cotton ever made or requested. That every settlement was of differences. Witness shows the form in which orders were given and executed by telegrams—followed by letters—read by witness. The dealings culminated in a purchase of 5,000 bales made in one day. That he told plaintiffs of the amount of the capital stock of Lawton-Simpson Company and how much of it was paid in. That the value of 5,000 bales of cotton at 15 cents per pound would be about $400,000. That the note in suit was given in part settlement of the loss on that cotton. Total loss was between $26,000 and $27,000. That plaintiffs so stated. On cross-examination defendant testified that the contracts for 5,000 bales of cotton were made for himself—order was sent for all on same day—1,000 bales each order. That he was sure that in his conversation with Mr. Tate in New York he told him that he wanted the line of credit to make speculative contracts for his customers. That he sent them plenty of speculative contracts for his customers. Mr. Sterrett Tate denied the statement of Lawton in regard to the conversation in New York; that is, that Lawton said that he wanted the line of credit for Lawton-Simpson Company as a basis for speculative contracts for their customers, that he said that "he would have to make hedge contracts to conduct the business." There was other testimony contradictory of defendant. Blank forms of contracts used on the New York Cotton Exchange, together with the charter, by-laws, rules, etc., of the Exchange, were introduced, all of which were competent to be considered by the jury on the issues. That counsel for plaintiffs understood that defendant had testified that he notified plaintiffs of the character of the contracts to be made is evident from his statement to the court. He said:

"Since the witness has already put himself on record as having indicated to these plaintiffs that his sole purpose was to gamble up there and that he did not buy any spots up there," etc.

Without incumbering this opinion with further quotations from the record, I think that there was evidence which, if believed by the jury, brought the case within the principle of Irwin v. Williar, 110 U. S. 499, 4 Sup. Ct. 160, 28 L. Ed. 225, and many other decisons of both state and federal courts. In Irwin's Case the court approved Mr. Benjamin's definition of a wagering contract. After defining a valid contract for the sale of property for future delivery, he says:

"But such a contract is only valid when the parties really intend and agree that the goods are to be delivered by the seller and the price paid by the buyer; and, if under guise of such a contract the real intent be merely to speculate in the rise or fall of prices, and the goods are not to be delivered, but one party is to pay to the other the difference between the contract price and the market price of the goods at the date fixed for executing the contract, then the whole transaction constitutes nothing more than a wager and is null and void." Benj. on Sales, 541.

This language has been uniformly approved. Embrey v. Jemison, 131 U. S. 344, 9 Sup. Ct. 778, 33 L. Ed. 172, and many other cases. A contract coming within this definition is "illegal and void as against public policy"—and it is said: ·

"It makes no difference that a debt or wager is made to assume the form of a contract. Gambling is none the less such because it is carried on in the form or guise of legitimate trade."

In regard to the status of a broker who sues for the recovery of balances or differences paid out for his principal on such contracts it is uniformly held that:

"It is certainly true that a broker might negotiate such a contract without being privy to the illegal intent of the principal parties to it which renders it void, and, in such case, being innocent of any violation of law, and not suing to enforce an unlawful contract, has a meritorious ground for the recovery of compensation for services and advances. But we are also of the opinion that when the broker is privy to the unlawful design of the parties, and brings them together for the very purpose of entering into an illegal agreement, he is particeps criminis, and cannot recover for services rendered or losses incurred by himself on behalf of either in forwarding the transaction." Rountree v. Smith, 108 U. S. 269, 2 Sup. Ct. 630, 27 L. Ed. 722; Irwin v. Williar, supra; Embrey v. Jemison, supra; Anderson v. Holbrook, 128 Ga. 233, 57 S. E. 500, 11 L. R. A. (N. S.) 575, and notes.

"If a broker or other agent is employed to carry out an illegal transaction, and is privy to the unlawful design, and by virtue of his employment performs services, makes disbursements, suffers losses or incurs liabilities, he has no remedy against his principal." Clark on Contracts, 501.

That a note has been given by the principal to the broker for amounts paid out by him on account of such contracts is tainted with the illegality of the original transaction is held by the Supreme Court of the United States. In Embrey v. Jemison, supra, it is said:

"He cannot be permitted to withdraw attention from this feature of the transaction by the device of obtaining notes for the amount claimed under that illegal agreement; for they are not founded on any new or independent consideration, but are only written promises to pay that which the obligor had verbally agreed to pay. They do not in any just sense constitute a distinct or collateral contract based upon a valid consideration. Nor do they represent anything of value in the hands of defendant which in good conscience belongs to the plaintiff or his firm. Although the burden of proof is on the obligor to show the real consideration, the execution of the notes could not obliterate the substantive fact that they grew immediately out of, and are directly connected with, a wagering contract. They must, therefore, be regarded as tainted with the illegality of that contract, the benefits of which the plaintiff seeks to obtain by this suit."

It is true that formerly courts giving expression to the public sentiment on the subject enforced many gambling contracts, and were astute to find ground for permitting recoveries on obligations growing out of them, but it is said:

"Under the influence of a healthy public sentiment, they have become impatient of investigating disputes, founded upon any species of gambling and almost, without exception, refuse to enforce a contract, supported by such a subject-matter." May on Ins. 74.

The courts, recognizing the difficulty of exposing the varied devices resorted to for the purpose of concealing the real character of these contracts, have been liberal in admitting testimony to show the truth in regard to them. The intention of the parties being the pivotal question, the courts adopt the principle in regard to the relevancy of testimony which prevails in questions of alleged fraud. In James v. Haven & Clement, 185 Fed. 692, 107 C. C. A. 640, an action in which the same questions were at issue as in this case, it appears that, while the trial court admitted the testimony offered, exception was taken to the charge. Pardee, Circuit Judge, sustaining that exception, says:

"The charge deals with the issue as though there was no other evidence thereon than that found in the conversations between Tate, the plaintiff's agent, and the defendant, James, while the bill of exceptions shows the course of dealing between the parties which throws much light on the subject, and shows other pointed facts and circumstances directly bearing on the issue and tending to show mutuality in the understanding that no actual delivery of cotton was contemplated."

In Re Baxter & Co., 152 Fed. 137, 81 C. C. A. 355, 11 Ann. Cas. 437, the question as to the character of contracts for future delivery of cotton was involved. It is said:

"It is impossible to contradict the testimony of a witness as to his state of mind by direct evidence, unless he has made impeaching statements, and such testimony, where it is that of an interested party, is entitled to but little weight if it is inconsistent with the reasonable presumptions arising from circumstantial evidence. The probability that an intelligent man who enters upon a course of speculative dealings with a bucket shop does so with the understanding that the purchases or sales are to be merely colorable is so strong as to amount to a presumption of fact."

The opinion concludes:

"The courts ought not to indulge in any violent or improbable inferences from the facts to assist either of the parties to such dealings or to differentiate their dealings from ordinary gambling transactions."

In Williamson v. Majors, 169 Fed. 754, 95 C. C. A. 186, plaintiff, engaged in the real estate business, dealt, to a considerable extent, through defendant in cotton contracts for future delivery. At the conclusion of the dealings, he gave his note secured by mortgage on real estate to cover losses, alleged to have been sustained and paid by defendant. The suit was in equity for cancellation of the notes and mortgage for that the consideration of the notes was for illegal transactions, etc. The statute of Mississippi permitted such relief. The evidence was, in its general character, similar to that in this record. Judge Pardee, says:

"The evidence shows that nearly all of Williamson's purchases and sales were made through and on the Cotton Exchange of New Orleans and New York and in accordance with the rules of said Exchange, under which actual delivery is said to be contemplated and may, by a member of the Exchange, be exacted (but whether by an outsider is not clear); but, as a matter of fact, under said rules, delivery is rare, the general practice being to take profits or pay losses as the prices vary."

The learned judge, after reciting how the transactions in question had been conducted, says:

"From what has been recited, it is clear that in his buying and selling cotton futures Williamson, who was in the real estate business and not in the cotton business, had no intention to actually buy or sell cotton, but was merely speculating on the rise and fall of the cotton market, intending to settle by receiving or paying differences, in fact, gambling in cotton futures, and it seems clear that Bettis Majors knew all about it. Certainly from a mere inspection of Williamson's orders he ought to have known it. Under the evidence, to assume his ignorance of Williamson's gambling would be a reflection on his intelligence."

In Burns v. Tomlinson, 147 N. C. 645, 61 S. E. 614, it is held that for the purpose of showing the intention of the parties in such cases evidence of former dealings between them is competent. I am of the opinion that defendant's exception and assignment of error, because of the exclusion of the evidence offered of former dealings between Lawton and plaintiffs, should be sustained. In addition to the well-settled principle that contracts of the character disclosed by the testimony in this record are violative of sound public policy, the states of South Carolina and Georgia—as almost all others—have endeavored to enforce this policy by the enactment of rigid statutes condemning these wagering contracts refusing to enforce them in their courts. The courts have uniformly enforced these statutes. They are not enacted because of any favor towards, or sympathy with, those whose cupidity or folly induces them to seek "to get rich quick" or to get "something for nothing" to enter into these contracts, but because of the injury which they entail no less on the morals than the material welfare of the country. This record does not disclose a case calling for any sympathy for the defendant. Experience has demonstrated that:

"There is no practice prevalent in the trade conditions of this present time which does more to unsettle legitimate business, to degrade the probity of individuals engaged therein, and to bring unanticipated loss upon what would otherwise be stable and prosperous lines of trade." Bailey v. Philips (C. C.) 159 Fed. 535.

I have discussed the record upon the principle which I understand prevails in this country, that independent of statutes as, a matter of public policy, all wagering contracts are void or, at least, unenforceable in the courts. If the loci contractus be New York, it is undoubtedly void as held by the courts of that state. The statutes of South Carolina and Georgia are exceedingly stringent in respect to these contracts. From any viewpoint I am of the opinion that if the facts alleged in the plea, and, as I think, sustained by the evidence, be found by the jury, the plaintiffs are not entitled to recover.